441 P.2d 586

The STATE of Arizona, Appellant,

v.

Margaret E. McManus CRAWFORD, Appellee.

No. 2 CA–CIV 505.

Court of Appeals of Arizona.

June 4, 1968.

Rehearing Denied July 3, 1968.

Darrell F. Smith, Atty. Gen., Peter C. Gulatto, Asst. Atty. Gen., for appellant.

Standage & Allen, by Gove L. Allen, Mesa, for appellee.

MOLLOY, Judge.

This is an inverse eminent domain proceeding. Plaintiff holds the fee title to ten acres of land located in Pinal County, consisting of two adjacent five-acre tracts which her predecessors in title acquired by patents from the United States of America in 1954 and 1955. The State Highway, known as US Routes 60, 70, 80 and 89 runs across plaintiff's land and the dispute is over the width of the highway right-of-way.

Plaintiff in her pleadings concedes that the State has a valid right-of-way 100 feet in width but contends that the State never acquired any greater right-of-way. The State asserts that it has a right-of-way 300

feet in width which antedates the patents issued to plaintiff's predecessors in title.

Acting pursuant to its claim, the State in early 1964 came on the land in dispute and built a second lane of highway parallel to the existing road. Plaintiff thereafter instituted this action to establish her title to the 200 feet in question and to obtain damages for its taking. The trial court granted a motion by plaintiff for summary judgment as to her title and the State's liability for a taking of her property. A judgment was subsequently entered for plaintiff in the stipulated amount of $45,-000. The State brings this appeal.

The following basic facts are not in question. The original road, called the Mesa-Superior Highway, was built in 1919-1920 in its present location over unreserved public land of the United States. The road was established under the authority of Pinal County, but it formed a part of the State Highway system. The State acquired title to the highway in 1927. At that time, and at all times thereafter until early 1964, the physical roadway, including pavement, ditches, borrow pits and subsurface piping, did not extend beyond the 100 foot right-of-way conceded by plaintiff.

In October, 1940, the State Highway Engineer prepared a map on which he drew a 400 foot right-of-way covering all of the land here in dispute. At that time, the land outside of the immediate roadway had been withdrawn from the public domain for use as a stock driveway. The map was presented to the Department of the Interior, which considered the communication as an application for modification of the existing order of withdrawal. So considered, the Department granted the application, so that the State could proceed with its project without further action by the federal government.

On March 6, 1942, the Arizona State Highway Commission passed a resolution, hereinafter set forth, purporting to authorize certain changes in the "Mesa-Superior Highway, U. S. Route 80." In April, 1954, a resurvey of the section in which plaintiff's lands are located was approved by the Department of the Interior. The resurvey map or plat indicated the existence of a 400 foot right-of-way identical with that shown on the 1940 map referred to above. The State, by resolution of its Highway Commission, in 1963, abandoned the southerly 100 feet of the 400 foot strip shown on the map prepared in 1940, leaving the presently claimed 300 foot strip.

It is undisputed that whatever its width, the right-of-way in question was acquired by the State or its subdivision and predecessor, Pinal County, from the United States pursuant to the terms of Title 43, U.S.C.A. § 932, which provides:

> "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

Plaintiff concedes that, pursuant to the action of the Department of the Interior referred to above, all of the land which is now claimed by the State as its right-of-way was unreserved land subject to acquisition under this statute provided that the State's powers of acquisition were validly and effectively exercised.

On this appeal, the State contends that plaintiff did not carry the burden upon her to show that she was entitled to succeed on the strength of her own title, or that in any event, there were unresolved factual issues which precluded entry of summary judgment for plaintiff. Plaintiff takes the position that she established a prima facie case entitling her to recovery, and that since the State failed to show the existence of facts negativing her claim, she was entitled to judgment under the rule of such authorities as Wakeham v. Omega Construction Co., 96 Ariz. 336, 395 P.2d 613 (1964), and Knight v. DeMarcus, 102 Ariz. 105, 425 P.2d 837 (1967).

Both of the parties advance opposing contentions that plaintiff's instruments of title are decisive of the litigation. We will first consider those contentions, because they serve to narrow the limits of the controversy.

The State, relying upon Allison v. State, 101 Ariz. 418, 420 P.2d 289 (1966), argues that reference to a 400 foot right-of-way in the 1954 survey plat precludes plaintiff from asserting that the right-of-way does not exceed 100 feet. In the *Allison* case, the patents contained the following explicit reservation:

. " 'There is also reserved a right of way for a Federal Aid Highway under the Act of November 9, 1921 (42 Stat. 212).' " 101 Ariz. at 421, 420 P.2d at 292.

Lacking any such pertinent and explicit reservation in the patents before us here, the State notes the clause in the present patent which states, after the description of the land patented: "The area described contains 5 acres, according to the Official Plat of the Survey of the said Land. * * *" The State calls our attention to authorities such as United States v. Otley, 127 F.2d 988 (9th Cir. 1942), which holds that where a patent refers to the official government survey, the latter becomes a part of the instruments of conveyance. In effect, the State takes the position that, by such incorporation of the plat into the patents, the surveyor's notation of a 400 foot right-of-way on the survey plat is tantamount to an explicit reservation or exception in the patent itself and that plaintiff is bound thereby under the general principle of estoppel by deed. See Allison v. State, 101 Ariz. 418, 421, 420 P.2d 289, 292 (1966).

 The force of the State's argument in this direction is broken by well-settled limitations imposed on the function and authority of a surveyor. We note preliminarily the question before us is not whether plaintiff's predecessors had notice of the State's claim, but whether the claim itself has any efficacy. Whether or not a public highway exists and the extent of its boundaries are ordinarily questions of law. In the present case, as will hereinafter appear, the right-of-way in question was established by the operation of the fed-

eral statute quoted above and its interplay with the pertinent Arizona statutes regarding the establishment of highways. A surveyor is not a judicial officer. It is not within his province to make a determination as to whether land is within or without the operation of certain laws. Gauthier v. Morrison, 232 U.S. 452, 34 S.Ct. 384, 58 L.Ed. 680 (1914). See also Borax Consolidated, Ltd. v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9 (1935); United States v. State of Louisiana, 229 F. Supp. 14 (W.D.La.1964). While the reference to the plat of this surveyor undoubtedly has bearing upon the legal boundaries of the tract of land conveyed, this plat cannot determine the legality of the right-of-way here in dispute.

Plaintiff, on the other hand, advances the argument that the failure of United States government officials to include a reservation or exception of the existing highway compels the conclusion that no right-of-way was ever established, or at least no right-of-way in excess of that necessary to contain the existing highway as physically constructed at the time patents were issued to plaintiff's predecessors. Plaintiff cites Regulations of the Secretary of the Interior purporting to require notations of existing right-of-ways on original entry papers,[1] and also cites that portion of the court's opinion in the *Allison* case which states, at 101 Ariz. 425, 420 P.2d 296:

"It was the obvious duty of the Secretary to reserve in subsequent patents previously granted rights of way."

Plaintiff urges that (1) the patents to her predecessors showing no existing right-of-way are impervious to attack in this "collateral" proceeding, and (2) since it was the duty of the officials issuing the patents to note the existence of the right-of-way, failure of the patents to show the right-of-way is a conclusive denial of its existence.

 It is true that a patent is "the highest evidence of title," United States v. Stone, 2 Wall. 525, 69 U.S. 525, 17 L.Ed.

1. 43 Code of Fed.Regs. (1967) § 1821.4.

765 (1865), and that a patent may not be "attacked" in a collateral proceeding. St. Louis Smelting and Refining Co. v. Kemp, 104 U.S. 636, 26 L.Ed. 875 (1881), cited and quoted at length in Allison v. State, supra. However, it is also clear from cases decided under 43 U.S.C.A. § 932 that a subsequent patentee takes subject to previous right-of-ways established under the grant contained in that federal statute. Flint & Pere Marquette Ry. Co. v. Gordon, 41 Mich. 420, 2 N.W. 648 (1879); Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864 (1946); Wells v. Pennington County, 2 S.D. 1, 48 N.W. 305 (1891). No contrary authority has come to our attention. We do not think the Regulations of the Secretary of the Interior cited by plaintiff were intended to have or could be given an effect here, as urged by plaintiff, which would thwart the will of Congress as expressed in 43 U.S.C.A. § 932 to grant right-of-ways to the public. Compare Allison v. State, supra, at 101 Ariz. 425, 420 P.2d 296. The silence of the patents does not preclude the State from showing the full extent of its right-of-way established prior to the time when the patents were issued to plaintiff's predecessors.

We come, then, directly to the critical question of whether the State did so establish its claimed right-of-way prior to the time when plaintiff's predecessors took fee title to all the land in question.

■■■ Cases decided under 43 U.S.C.A. § 932 hold that it constitutes an offer on the part of the federal government to dedicate unreserved lands for highway purposes, which offer must be accepted by the public in order to become effective. See, e. g., Ball v. Stephens, 68 Cal.App.2d 843, 158 P.2d 207 (1945); Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864 (1946); Pederson v. Canton Township, 72 S.D. 332, 34 N.W.2d 172 (1948). Whether the offer to dedicate which is made under the federal act is accepted by the establishment of a public highway is an issue to be determined under the law of the state where the highway is located. Ball v. Stephens, supra; State ex rel. Dansie v. Nolan, 58 Mont. 167, 191 P. 150 (1920). The federal statute does not of itself operate to grant right-of-ways and establish highways contrary to the local laws. Tucson Consolidated Copper Co. v. Reese, 12 Ariz. 226, 100 P. 777 (1909). The latter case makes it clear that, in order for there to be a public highway, the right-of-way for which is granted by the federal act, the highway must be established in strict compliance with the provisions of the Arizona law. And, just as the local state law is determinative of the issue of whether or not a public highway exists at all, it is also determinative of the issue of the width and extent of the public right-of-way. City of Butte v. Mikosowitz, 39 Mont. 350, 102 P. 593 (1909); Costain v. Turner County, 72 S.D. 427, 36 N.W.2d 382 (1949); Bishop v. Hawley, 33 Wyo. 271, 238 P. 284 (1925).

■■■ A.R.S. § 18–154, subsec. A provides:

"When the state engineer desires to establish, open, relocate, alter, vacate or abandon a state highway, or any portion thereof, or when directed to do so by the commission, he shall make and deliver a written report to the commission describing the highway, or portion thereof, to be affected thereby. If the commission decides that the public convenience will be served, it shall enter a resolution upon its minutes approving the proposed action and authorizing the state engineer to proceed thereon, and to acquire any property therefor by condemnation or otherwise."

Under the foregoing statute, it was incumbent upon the State Highway Commission to proceed in accordance with the explicit terms of the statute in altering the public highway in this case. Bd. of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343 (1931). The State Highway Commission acted in accordance with the terms of the statute at least insofar as it passed the resolution on March 6, 1942, authorizing alterations in the

Mesa-Superior Highway, which reads as follows:

"WHEREAS, W. R. HUTCHINS, the Arizona State Highway Engineer, has presented to and filed with this Commission his written report and recommendation respecting the location, relocation and alteration of a portion of the Mesa-Superior Highway, U. S. Route 80, in accordance with maps and plats now on file in the office of the State Highway Engineer, which written report is attached to and made a part of this Resolution;

"NOW, THEREFORE, BE IT RESOLVED, that the public convenience will be subserved by the location, relocation and alteration of that part of the Mesa-Superior Highway, U. S. Route 80, along the located center line thereof, as set forth in the proposal and report;

"That said proposal and report are approved hereby;

"That that part designated as the Mesa-Superior Highway, U. S. Route 80, is hereby designated a state highway upon the line of survey, as delineated in the said maps and plats on file in the office of the State Engineer.

"That said State Highway Engineer is hereby authorized and directed to acquire by exercise of the power of eminent domain, or otherwise, in the name of and for the State of Arizona, any and all land or property necessary and required in and for the location, relocation and alteration of said highway, together with any right, title or interest therein, which is now or hereafter necessary or required for or in the location, relocation and alteration of said Mesa-Superior Highway, U. S. Route 80."

█ It will be noted that the resolution refers to a report of the State Highway Engineer, which was presumably the report required by the provisions of A.R.S. § 18–

154, subsec. A. That report, however, is not a part of the present record in this case. We think that the resolution of March 6, 1942, in and of itself without the aid of the report and recommendations or proposal of the State Highway Engineer is inadequate to establish a 400 foot right-of-way in the State of Arizona. The resolution is defective in that it does not describe the width of the right-of-way to be acquired, in that it does not adequately describe the highway which was to be altered, and in that there is no provision in it explicitly providing that the highway is to be widened at all or in what location. See, in this connection, Petition for Establishment of Judicial Highway, 213 Minn. 314, 6 N.W.2d 626 (1942); and City of Danville v. Anderson, 189 Va. 662, 53 S.E.2d 793 (1949). The resolution of March 6, 1942, in and of itself would be void under the rule set forth in these cases because it does not adequately apprise the public of the extent of the State's right-of-way.

. The resolution does, however, make reference not only to the report of the Engineer, but also to " * * * maps and plats now on file in the office of the State Highway Engineer * * *." The resolution also explicitly adopts the proposal and report of the Engineer, and designates the Mesa-Superior Highway, U. S. Route 80, a state highway along the line of survey,[2] " * * * as delineated in the said maps and plats on file in the office of the State Engineer."

█ As indicated, we do not have before us the report and proposal which is referred to in the resolution. If the map prepared by the State Highway Engineer in 1940 is one of the "maps and plats" referred to in the resolution, it is not identified as such. While the resolution is defective by itself, it is possible that the report and proposal, aided by the plats and

---

2. The location of the line of survey, which coincides with the center line of the original highway, is not in dispute.

maps[3] all referred to therein may clearly show that the State validly designated and thereby established its claimed 400 (now 300) foot right-of-way over plaintiff's land. Matters required to be in an order of a public administrative body may be incorporated by reference. Railroad Commission v. Continental Bus System, 230 S.W.2d 299 (Tex.Civ.App.1950); 73 C.J.S. Public Administrative Bodies and Procedure § 142, at 473. It may be that a more diligent effort on the part of the State to get to the heart of this litigation would have produced an evidentiary showing as to the contents of these documents but we do not believe this lack of diligence, if any, forecloses the State's position.

· ■ The burden is upon the party moving for summary judgment to show the lack of existence of any genuine issue of material fact, regardless of who would have the burden of proving the facts at trial. Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967).

■ This record leaves a substantial doubt as to whether the State legally accepted the federal government's offer of grant as to this right-of-way. The plaintiff has not affirmatively and clearly negatived this possibility, and this she had to do in order to prevail on summary judgment. Lujan v. MacMurtrie, 94 Ariz. 273, 277, 383 P.2d 187, 190 (1963); Flynn v. Lindenfield, 6 Ariz.App. 459, 433 P.2d 639 (1967).

Reversed and remanded for proceedings consistent herewith.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

3. The October, 1940, map was never approved by the Department and does not, therefore, constitute a patent to the State. Cf. Allison v. State, 101 Ariz. at 423, 420 P.2d at 294.