562 P.2d 360

STANDAGE VENTURES, INC., et al.,
Theressa M. Sheffer and Homer G.
Phelps, Appellants,

v.

STATE of Arizona, Appellee.

No. 12792–PR.

Supreme Court of Arizona,
En Banc.

March 10, 1977.

Rehearing Denied April 6, 1977.

Holohan, J., concurred in the result.

Douglas H. Standage, Gove L. Allen, Mesa, for appellants.

Bruce E. Babbitt, Atty. Gen., by Stanley Z. Goodfarb and Paul S. Harter, Asst. Attys. Gen., Phoenix, for appellee.

HAYS, Justice.

This matter involves an inverse eminent domain proceeding commenced against the State of Arizona in 1967 by various owners of five-acre parcels of land located in township 1 north, range 8 east, sections 21 and 27, and abutting portions of U.S. Route 60, 70 near Apache Junction, Arizona. The highway, also known as the Mesa-Superior Highway, runs across the plaintiff's land, and this dispute concerns the width of the highway's right-of-way. The state claims a right-of-way of 400 feet in section 21 and 300 feet in section 27, whereas the plaintiff landowners claim that the state's right-of-way is only 100 feet in both sections.

The plaintiffs held title to their land under patents acquired by them or their predecessors from the United States Government in 1954 pursuant to 43 U.S.C. § 682a. It is conceded that the patents are subject to at least a 100-foot right-of-way. The state contends that certain state action in the year 1942, hereinafter delineated in greater detail, established a 400-foot right-of-way which, if properly established, would have priority over the plaintiff's patents. *See State v. Crawford,* 7 Ariz.App. 551, 441 P.2d 586 (1968). Thus, the principal dispute in this litigation was whether the state did, in fact, increase the width of the right-of-way from 100 to 400 feet by the statutory procedures provided in § 59–203 A.C.A. (1939) prior to the time when the plaintiffs or their predecessors took title, via the patents, to the land in question.

The history of this road and the litigation which has evolved from it, in pertinent part, are as follows. The Mesa-Superior Highway was built by Pinal County in 1919–20 over unreserved lands belonging to the United States. The state acquired title to the highway in 1927 and it is undisputed that the right-of-way was then 100 feet.

In October of 1940, in preparation for a road reconstruction and improvement project, the State Highway Engineer prepared a map that depicted a 400-foot right-of-way and which was submitted with an application to the Department of Interior to increase the right-of-way from 100 to 400 feet. The land had previously been withdrawn by order of the Department of Interior from the public domain for use as a stock driveway. The state's application was approved by the Department in 1941, thereby allowing the state to proceed with the project without further action by the federal government. Strict compliance with state statutory procedures was still necessary at this point to establish in the state the increased right-of-way. *State v. Crawford, supra.*

On March 2, 1942, pursuant to § 59–203 A.C.A. 1939, the State Engineer caused a survey to be made of a portion of the Mesa-Superior Highway as the same is delineated upon a certain map entitled "State Highway—Mesa-Superior Highway—U.S. Route 80, Scale 1″ is equal to 1000′." In his written report to the highway commission he indicated that the highway *to be affected* was as indicated on the above-described map, and he proposed to alter a portion of that highway along its surveyed center line.

Subsequently, on March 6, 1942, the Arizona Highway Commission accepted the engineer's recommendation and passed a Resolution adopting the engineer's recommendation and purporting to authorize certain changes in the Mesa-Superior Highway. The Resolution, in pertinent part, reads as follows:

"RESOLUTION:

"WHEREAS, W. R. HUTCHINS, the Arizona State Highway Engineer, has presented to and filed with this Commission his written report and recommendation respecting the location, relocation and alteration of a portion of the Mesa-Superior Highway, U.S. Route 80, *in accordance with maps and plats now on file in the office of the State Highway Engineer,* which written report is attached to and made a part of this Resolution;

"NOW, THEREFORE, BE IT RE-SOLVED, that the public convenience will be subserved by the location, relocation and alteration of that part of the Mesa-Superior U.S. Route 80, along the located center line thereof, *as set forth in the proposal and report*;

"That said proposal and report are approved hereby;

"That said part designated as the Mesa-Superior Highway, U.S. Route 80, is hereby designated a state highway upon the line of survey, as delineated in the *said maps and plats* on file in the office of the State Engineer. (Emphasis added)

. . . ."

The Resolution also authorizes the engineer to acquire the lands necessary to accomplish the highway improvement project. It is not disputed that this Resolution and the report and survey incorporated therein did, in fact, establish a right-of-way.

In 1964, the state, pursuant to its claim that it had a 400-foot right-of-way, began construction on a second strip of highway parallel to the original road in order to widen it to a four-lane highway. The plaintiffs thereafter instituted this suit in the Pinal County Superior Court to establish title in themselves beyond the conceded 100-foot right-of-way and to obtain damages for the state's unlawful encroachment on their land.

The case was removed to the federal district court. It was eventually remanded, however, to the state court by the Ninth Circuit Court of Appeals due to the lack of a substantial federal question. *Standage Ventures, Inc. v. Arizona,* 499 F.2d 248 (9th Cir. 1974).

Trial was finally commenced in May of 1975 in the Superior Court of Pinal County to ascertain the width of the right-of-way. The determination of that question revolved around the Resolution and the Report and Survey incorporated therein which together acted to establish the right-of-way in the state. More precisely, however, the pivotal issue was to ascertain what "maps and plats," were incorporated by reference into the Resolution. The Resolution itself

was devoid of a specific description of the highway and, thus, it was only through a determination of the maps referred to in the Resolution and Report, and incorporated therein, that the width of the right-of-way could finally be determined.

During the course of the trial, certain parol evidence was offered by the state and admitted by the trial court into evidence without objection by the plaintiffs. Based upon this parol evidence, the trial court made a specific finding of fact that the map referred to in the engineer's Resolution actually consisted of two maps, Exhibits 20 and 22, both of which depict a 400-foot right-of-way. As a result of that finding naturally sprung the court's judgment in favor of the state and against the plaintiff landowners.

The landowners thereupon took an appeal to Division Two of the Court of Appeals which reversed and remanded. The state filed a motion for rehearing which was denied. A petition for review was then filed by the state with this court pursuant to 17A A.R.S. Supreme Court Rules, rule 47(b). The decision of the Court of Appeals is vacated.

▮▮▮ The first question we address concerns the application of the parol evidence rule. That rule prohibits the use of extrinsic evidence to add to, subtract from, vary or contradict the terms of a complete and unambiguous written agreement. *Richards Development Co. v. Sligh,* 89 Ariz. 100, 358 P.2d 329 (1961). Where, however, an ambiguity exists on the face of the document or the language admits of differing interpretations, parol evidence is admissible to clarify and explain the document. *Bickart v. Greater Arizona Savings & Loan Ass'n,* 103 Ariz. 166, 438 P.2d 403 (1968).

▮▮▮ Though the parol evidence rule is most often encountered in the context of bilateral contracts, the rule applies with equal force to official records and documents that are required to be kept in writing and that evidence certain unilateral acts. *City of Glendale v. Skok,* 6 Ariz.App. 342, 432 P.2d 597 (1967); *Childress v. Peter-*

*son,* 18 Cal.2d 636, 117 P.2d 336 (1941); 9 Wigmore on Evidence, 3d ed § 2427. Thus, the records of the state highway commission and the state engineer that establish state highways and their rights-of-way are proper subjects for the application of the parol evidence rule. *Barrett v. Hand,* 158 Neb. 273, 63 N.W.2d 185 (1954); *Western Sand & Gravel v. Town of Cornwall,* 2 Ill.2d 560, 119 N.E.2d 261 (1954); 32A C.J.S. *Evidence* § 882.

■ The Commission's Resolution did not describe the "maps and plats on file in the office of the State Engineer." Therefore, parol evidence was admissible to determine which maps and plats the Resolution refers to. *Richards Development, supra,* and *Bickart, supra.*

We hold that the findings of the trial court are supported by the evidence, and that parol evidence was properly admitted.

The appellants Standage have presented a number of issues in their brief which in the main are answered by the foregoing holding.

Issue No. I is: Whether a proceeding to establish a public highway is null and void if the record thereof fails to describe the highway. The trial court's findings which we have concurred in indicate that the record does not fail to describe the highway.

Issue No. II is: Whether the presumption of regularity can be used to supply the description of the highway in an otherwise defective proceeding. Having approved the finding of the trial court that the proceeding was not defective, the presumption never came into play.

Issue No. III concerning parol evidence is answered as previously indicated.

Issue No. IV concerns the interjection of another case, denominated the *Crawford* case into our subject case. Appellants contend that the issues of that case are the same as the issues here and that the doctrines of judicial estoppel and collateral estoppel should apply. We will treat these two doctrines separately.

The appellants have argued that because the state took the position in an earlier proceeding that the dimensions of the right-of-way were established in a map which was referred to in the Resolution but which was *lost, see State v. Crawford,* 13 Ariz. App. 225, 475 P.2d 515 (1970), they are estopped to take a 180° turnabout in this case and assert that the Resolution actually refers to two maps which are not lost but which were in fact introduced at trial as Exhibits 20 and 22.

■■ The doctrine on which the appellants rely has been variously termed judicial estoppel and estoppel by oath. Generally, the doctrine states that a party who has assumed a particular position in one judicial proceeding will not be allowed to assume an inconsistent position in a subsequent proceeding. *Martin v. Wood,* 71 Ariz. 457, 229 P.2d 710 (1951).[1] An essential element of this doctrine, however, is that the position first asserted must have been successfully maintained. *In re Estate of Cohen,* 105 Ariz. 337, 464 P.2d 620 (1970). This requirement was succinctly set forth in *State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co.,* 19 Ariz.App. 594, 509 P.2d 725 (1973), as follows:

"[T]he essence of the doctrine of judicial estoppel is not merely that a party has taken inconsistent positions in judicial proceedings. If such were the case, our rules would not expressly allow a party to state in his pleadings 'as many

---

1. We note that although the language of a number of our early decisions set forth the principle of judicial estoppel in terms of applying only to cases involving the same parties, *Martin v. Wood, supra;* *Adams v. Bear,* 87 Ariz. 288, 350 P.2d 751 (1960), and others, a recent Court of Appeals decision, *Mecham v. City of Glendale,* 15 Ariz.App. 402, 489 P.2d 65 (1971), has held that the doctrine may be asserted in subsequent litigation by one who was not a party to the prior suit. Because it was not argued either in brief or at oral argument, however, and because we are able to dispose of this issue on other grounds, we have chosen not to address ourselves to the question of the same party requirement and thus express no opinion thereon.

separate claims or defenses as he has regardless of consistency,' Rule 8(f)(2), Rules of Civil Procedure, 16 A.R.S., nor would a party who has given sworn testimony in a deposition be allowed to later take a contrary position in testifying at the trial. The essence of judicial estoppel is that a party *has gained an advantage— obtained judicial relief*—in one action by asserting one position, and that in view of his having gained that advantage, he must accept the burdens of that position in any subsequent litigation between the same parties involving the same issues. Under such circumstances the law will not allow a party 'to have his cake and eat it too.' " (Footnotes omitted, emphasis theirs). 19 Ariz.App. at 600, 509 P.2d at 731.

Applying this principle to the matter now before us, we note that in *State v. Crawford, supra,* the state did take the position that a certain map was lost. However, having taken that position, they were unsuccessful in their defense—they did not obtain judicial relief. As a result, the doctrine of judicial estoppel is not properly available to the plaintiffs to prevent the state from bringing forth evidence in this litigation to show the highway's right-of-way was established in two maps now in their possession, and we so hold.

Addressing the appellant's collateral estoppel, or more recently termed, issue preclusion by judgment contentions, it is their position that the court's finding in the earlier *Crawford* decision that the state had failed to show that it owned rights to the land there in question prior to the issuance of the plaintiff's patents, is binding on the state in this case and therefore ought to have precluded the relitigation of the issue in this case and should have precluded the introduction of evidence which tended to establish the state's right to the land here in question prior to 1954. We disagree.

We note first that the appellants were not party to the judgment which they

seek to invoke, *i. e., State v. Crawford, supra.* In *DiOrio v. City of Scottsdale,* 2 Ariz.App. 329, 408 P.2d 849 (1965), the Court of Appeals held that the doctrine of collateral estoppel may be raised in a second action by a party who was a stranger to the first judgment. *Spettigue v. Mahoney,* 8 Ariz.App. 281, 445 P.2d 557 (1968), however, limited the principle of law set forth in *DiOrio* in holding that a stranger to the first suit is allowed to implement the prior judgment *only* when doing so "defensively." That is, a party who is not bound by the judgment of an earlier lawsuit cannot take the initiative to invoke the judgment of the first suit, *i. e.,* rely on it offensively, to establish a necessary element of his case in a latter suit against one of the parties involved in the first litigation.[2]

That these principles of law are applicable to the case at bar is undisputed. The only issue we are confronted with is whether the appellants sought to invoke the doctrine of collateral estoppel in an offensive or defensive manner. The appellants posit that having affirmatively established their claim for recompense by the introduction of their patents, the burden shifts to the state. The burden having so shifted, they argue, their invocation of the collateral estoppel doctrine was strictly defensive.

This argument is entirely specious. The appellants brought this suit against the state and have attempted to rely on the earlier adjudication of *Crawford,* wherein they were not litigants, to preclude the state from proving its case and thus to establish the state's liability to them. This is a classic example of an offensive utilization of the doctrine of collateral estoppel and is therefore clearly prohibited by the principles of *Spettigue v. Mahoney, supra,* which we today expressly approve. As a result, the appellants' collateral estoppel claim must fail.

The fifth and final point pressed by appellants concerns whether the trial court erred in incorporating by reference a 1954

2. See *Spettigue v. Mahoney, supra,* for a penetrating analysis and discussion of this specific area of the law and the cases and articles cited therein for a fuller expository of offensive-defensive use of the doctrine of collateral estoppel by one not a party to the first judgment.

dependent resurvey, which showed a 400-foot right-of-way, in the appellants' patents. The appellants it seems do not argue that this constituted reversible error or that the court necessarily relied on the resurvey in arriving at its judgment, but only that the court should have limited its conclusions to the issue of whether the state established the right-of-way prior to 1954. Apparently they concede that if the right-of-way was properly established prior to 1954, the state must win. In light of the conclusion that we have hereinbefore expressed that the state did in fact establish in itself a 400-foot right-of-way in 1942, this issue is rendered moot and we thus need not consider it.

Pursuant to the foregoing analysis, the judgment of the trial court was correct.

Affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and GORDON, J., concur.

HOLOHAN, J., concurs in the result.