**In re DIAMOND SHAMROCK CHEMICALS COMPANY, the Dow Chemical Company, Monsanto Company, Hercules Incorporated, and T H Agriculture & Nutrition Company, Inc., Petitioners,**

**In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.**

**No. 754, Docket 83–3065.**

United States Court of Appeals, Second Circuit.

Argued Jan. 4, 1984.

Decided Jan. 9, 1984.

Certiorari Denied Feb. 27, 1984. See 104 S.Ct. 1417.

David John Dean, Carle Place, N.Y., Stephen J. Schlegal, Chicago, Ill., Benton Musslewhite and Thomas Henderson, Plaintiffs' Management Committee, Houston, Tex., Irving Like, Chairman, Law Committee, Babylon, N.Y., for respondents.

Before NEWMAN and WINTER, Circuit Judges, and MacMAHON, District Judge.[*]

WINTER, Circuit Judge:

This multi-district litigation in the Eastern District of New York involves several hundred actions brought by veterans of the armed forces of the United States, Australia and New Zealand who served in Vietnam at some time during the period 1961 to 1972 and by their spouses, parents and children. Jurisdiction is based upon diversity of citizenship. *In re "Agent Orange" Product Liability Litigation,* 635 F.2d 987 (2d Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). The plaintiffs claim to have suffered damages as a result of the veterans' exposure to "Agent Orange," a term applied to a group of similar herbicides containing toxic substances used by United States armed forces in Vietnam. The defendant chemical companies allegedly produced Agent Orange with unsafe levels of the chemical byproduct commonly called dioxin. Plaintiffs' theories of liability include negligence, strict liability, breach of implied warranty, intentional tort and nuisance. They seek compensatory and punitive damages.

On December 16, 1983, Chief Judge Weinstein certified two classes, one pursuant to Fed.R.Civ.P. 23(b)(3) and the other pursuant to Rule 23(b)(1)(B). *In re "Agent Orange" Product Liability Litigation,* 100 F.R.D. 718 (E.D.N.Y.1983). Familiarity with his Memorandum and Order is assumed. This petition for a writ of mandamus ensued. We deny the petition.

We note again that mandamus is an extraordinary remedy. Thus, "mere error,

Wendall B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, for petitioners.

[*] Hon. Lloyd F. MacMahon, of the United States District Court for the Southern District of New York, sitting by designation.

even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ." *United States v. DeStefano,* 464 F.2d 845, 850 (2d Cir.1972). We note also that this action is *"sui generis,* and national in its proportions" involving an extraordinary constellation of facts, parties and pleadings. *In re Agent Orange Product Liability Litigation, supra* at 995. (Feinberg, C.J., dissenting). Accordingly, it is not a case where mandamus is particularly appropriate because a district court's action is likely to "encourage the use of similar procedures by ... district courts in the future." *United States v. Dooling,* 406 F.2d 192, 199 (2d Cir.), *cert. denied,* 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969).

■ Chief Judge Weinstein certified a class under Fed.R.Civ.P. 23(b)(3)[1] of United States, Australian and New Zealand veterans, allegedly injured in Vietnam by Agent Orange, and various members of their families, on the grounds that common issues of law and fact predominated. Specifically, he identified as common issues general causation, failure to warn and affirmative defenses arising out of allegations concerning misuse by the government and federal contract requirements.

The oral argument before us cast considerable doubt upon the significance—not to say existence—of the issue of general causation. As described by plaintiffs' counsel, the issue is limited to whether the many harms alleged could conceivably have been caused by Agent Orange without regard to, or differentiation among, levels of exposure. Defendants' response that anything, even water, can be harmful, would seem to dispose of the issue, so defined, without more. However, our skepticism on this particular score, which may be alleviated by framing the issue in different terms, hardly calls for issuance of the writ since it is clear that common issues relating to the nature of the hazards caused by Agent Orange are directly involved in the parties' various contentions regarding an alleged failure to warn, the defense of misuse and the so-called government contract defense. Plaintiffs' claim that defendants conspired to conceal the dangers of Agent Orange also raises a common issue of fact.

Common issues of fact of considerable significance thus arguably exist. Potentially these include what each manufacturer knew and when it knew it, what each told the government and when it did so, what the government learned on its own and when it did so, what hazards of Agent Orange were known then and are known now, what influence the government exercised over the composition of the herbicide, and what various manufacturers communicated to each other. It is, of course, true that many issues are peculiar to the individual plaintiffs, such as the nature of the exposure to the herbicide, causation of individual ailments, and monetary damages. Whether further subclasses may be possible must be left to the future although it is clear that the residual individual trials will be a considerable task. Nevertheless, it seems likely that some common issues, which stem from the unique fact that the alleged damage was caused by a product sold by private manufacturers under contract to the government for use in a war, can be disposed of in a single trial. The resolution of some of these issues in defend-

---

1. Rule 23(b)(3) provides:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

ants' favor may end the litigation entirely. Moreover, since these issues may involve extensive documentary and testimonial evidence, Chief Judge Weinstein found that obviating a retrial in countless individual cases will lead to substantial economies in the use of judicial and private resources.

There are thus substantial grounds at this stage to support his conclusion that the common issues predominate and that a class action is the most efficient means of adjudicating them. Moreover, there is no guarantee that a non-class action decision on the common issues favorable either to a plaintiff or to the defendants will be recognized as dispositive in later cases under the doctrine of collateral estoppel as applied in different states. *See, e.g., Standage Ventures, Inc. v. State,* 114 Ariz. 480, 562 P.2d 360 (1977) (reaffirming mutuality requirement despite trend toward abolishing it); *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313 (1971) (same). The unique common issues take the case out of the general rule that "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." Advisory Committee Note to the 1966 Revision of Rule 23(b)(3), *reprinted in* 39 F.R.D. 69, 103 (1966). *See In re Northern District of California "Dalkon Shield" IUD Product Liability Litigation,* 693 F.2d 847 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *Payton v. Abbott Labs,* 100 F.R.D. 336 (D.Mass.1983); *Delaney v. Borden, Inc.,* 99 F.R.D. 44 (E.D.Pa.1983); *Mertens v. Abbott Laboratories,* 99 F.R.D. 38 (D.N.H.1983); *Thompson v. Procter & Gamble Co.,* No. C–80–3711, slip op., (N.D.Cal. Dec. 7, 1982); *Ryan v. Eli Lilly & Co.,* 84 F.R.D. 230 (D.S.C.1979); *McDaniel v. Johns-Manville Sales Corp.,* No. 76–735, slip op., (N.D.Ill. May 31, 1979); *Marchesi v. Eastern Airlines, Inc.,* 68 F.R.D. 500 (E.D.N.Y.1975).

Chief Judge Weinstein also found that the divergence among states as to choice of law and product liability rules is insignificant and that "a consensus among the states ... provides, in effect, a national substantive rule governing the main issues in this case." It is, of course, the law of this case that plaintiffs' claims arise under state law *In re "Agent Orange" Product Liability Litigation,* 635 F.2d 987 (2d Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981),[2] and it is possible that the law of every state and Australia and New Zealand, including choice of law rules, will at some point come into play. While we will not disclaim considerable skepticism as to the existence of a "national substantive rule," we note Chief Judge Weinstein's declared intention to create subclasses as dictated by variations in state law. Given the unique aspects of this case arguably creating a need for a single dispositive trial on the common issues described above, we cannot say that the use of subclasses corresponding to variations in state law is a palpable error remediable by mandamus.

Chief Judge Weinstein also certified a mandatory class under Rule 23(b)(1)(B).[3] Relying upon findings of a Special Master, he found that the defendants' assets are at this time sufficient to meet a judgment for compensatory damages. He reasoned, however, that because punitive damages are

---

**2.** That case did not decide whether potential defenses implicating federal interests such as the government contract defense would be governed by federal or state law.

**3.** Rule 23(b)(1)(B) provides:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

\* \* \* \* \* \*

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

designed solely to punish rather than to compensate, courts adjudicating later individual claims would admit evidence as to the payment of punitive damages in prior cases. Since this might induce juries to reduce punitive awards to later claimants, he found that an "adjudication with respect to individual members of the class . . . would as a practical matter be dispositive of the interests of the other members not parties to the adjudication." He then certified a class under Rule 23(b)(1)(B) for the award of punitive damages. Given the large number of potential claimants, estimated by the Special Master to be over 40,000 and given the fact that punitive damages ought in theory to be distributed among the individual plaintiffs on a basis other than date of trial, the argument against his ruling does not justify issuance of a writ of mandamus.[4]

■ Petitioners also attack Chief Judge Weinstein's provisions for notice to the class, which include written notice to all plaintiffs and intervenors in actions brought in federal courts and to all persons currently listed on the Veterans Administration's "Agent Orange Registry." Provision is also made for requests to radio and television networks and stations to broadcast notice, as well as notice by advertising in a number of newspapers and magazines. Notice is also to be given to the governors of each state who will be requested to notify any state organizations dealing with the problems of Vietnam veterans and then to notify Vietnam veterans identified by such organizations who may be a member of the class.

Chief Judge Weinstein found this to be the best notice practicable under the circumstances, a conclusion which, if not inexorable, is arguably correct, at least before the full results of the advertising and notice to the governors are known.

Review of the many issues raised by the class certification will be available when the ramifications of each aspect of the ruling will be evident. We decide only that the petition for mandamus is denied.

---

**4.** Subclasses may also be necessary here because of variations in state law governing the award of punitive damages.