**MARVIN JOHNSON, P.C., a professional corporation; Lesher & Borodkin, P.C., a professional corporation; Zlaket & Zlaket, P.C., a professional corporation, Plaintiffs,**

v.

**Samuel W. SHOEN, M.D., an individual; Michael L. Shoen and Christa Shoen, husband and wife; Mary Anna Shoen–Eaton, an individual; Cecilia M. Shoen–Hanlon, an individual; Katrina M. Shoen–Carlson, an individual; and Leonard S. Shoen and Carol Shoen, husband and wife, Defendants.**

**No. CIV 92–0185 PHX.**

United States District Court, D. Arizona.

Jan. 11, 1995.

1110

Jones, Skelton & Hochuli by William R. Jones, Jr. and Robert R. Berk, Phoenix, AZ, for plaintiffs.

Walter Gilmore Shaw, Phoenix, AZ, F. Raymond, Milwaukee, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On January 31, 1992, the plaintiffs filed a twelve-count complaint against the defendants asserting counts based upon breach of contract and quantum meruit. Jurisdiction is based on 28 U.S.C. Sec. 1332. The case is scheduled for a jury trial beginning on January 17, 1995. Presently before the court is the plaintiffs' "motion in limine re extrinsic evidence of contingency." The contingency in question is one claimed by the defendants; it would limit the plaintiffs from any entitlement to additional legal fees unless the defendants were ultimately successful and unless the plaintiffs remained as counsel till the conclusion of the case.

## BACKGROUND

The plaintiffs' motion contains a brief recitation of the facts involved in this action. The plaintiffs aver that the firm of Zlaket & Zlaket ["Zlaket"] is not a party to the motion in limine, as the parties have stipulated that payment of Zlaket's fees was not dependent upon the occurrence of a contingency.

This case involves a dispute over attorney's fees between the plaintiffs, three Phoenix law firms, and members of the Shoen family formerly represented by the plaintiffs. In early 1988, there was a struggle for control of Amerco, Inc. ["Amerco"], which is the parent company of U–Haul. There was a split in the Shoen family, which owns essentially all of the stock of Amerco. One group, headed by Joseph Shoen, became known as the "inside group," and the other group, the defendants in this action, became known as the "outside group."

In July 1988, the inside group gained control of Amerco by causing an additional 8,099 shares of stock to be issued to employees of Amerco who were loyal to the inside group. In the fall of 1988, the outside group, represented by the Phoenix law firm of Meyer, Hendricks represented the outside group for approximately three months in the 8,099 share case, during which time the firm billed, and was paid, in excess of $600,000. In October 1988, the defendants sought to replace Meyer, Hendricks with the law firm of Marvin Johnson, P.C. ["Johnson"]. Johnson sent a "fee letter" to four members of the outside group, stating that he would represent the defendants, with the assistance of Robert Lesher. Three members of the outside group signed the fee letter and returned it to Johnson. A copy of the fee letter is attached to this decision.

The letter stated that Johnson would represent the defendants in the case in which they had previously been represented by Meyer, Hendrickson. The fee letter also provided for a $250,000 retainer, payable in two installments at the outset of the representation. The letter further stated that Johnson did not charge hourly rates, and that "[w]hen concluded," Johnson would give the defendants a bill, "payable on presentation with interest at the legal rate until paid." The plaintiffs allege that the case consumed virtually all of Johnson and Lesher's time.

In the 8,099 share case, the plaintiffs, the defendants in this action, sought a temporary restraining order, permanent relief, and damages. The trial court denied the outside group's request for an injunction invalidating the inside group's issuance of the 8,099 shares of Amerco stock; that ruling was affirmed by the Arizona court of appeals. The case went to trial in the fall of 1994, and the outside group obtained a $1.6 billion jury verdict.

Johnson and Lesher aver that they represented the defendants in other lawsuits (seven), in addition to the 8,099 share case, filed either by the defendants, or against them. In another action, the "Amerco scheme case," the defendants obtained a defense verdict. The defendants were represented by Zlaket and Johnson in that case.

The plaintiffs aver that there was no separate fee arrangement for their representation of the defendants in the other cases. They aver that Johnson and Lesher withdrew from representation of the outside group in August 1991. In August 1991, Johnson submitted a bill to the defendants in the amount of $3.5 million, on behalf of himself and Lesher, for legal services provided in all of the cases except the Amerco scheme case. Shortly thereafter, Johnson and Zlaket submitted a separate request for payment in the amount of $1 million for the Amerco scheme case.

The plaintiffs aver that the defendants refused to pay any portion of these bills and maintained that the $250,000 constituted payment in full for the plaintiffs' services, as any payment beyond the initial $250,000 was contingent on the outside group's ultimate success in the 8,099 share case and the defendants' ability to the initial $250,000 was contingent on the outside group's ultimate success in the 8,099 share case and the defendants' ability to liquidate their shares of Amerco stock. The plaintiffs seek to prevent the defendants from presenting any extrinsic evidence at trial of the purported contingency.

## ANALYSIS

■ Under Arizona law, extrinsic evidence cannot be used to "add to, subtract from, vary, or contradict the terms of a complete and unambiguous written agreement." *Standage Venture, Inc. v. State*, 114 Ariz. 480, 482, 562 P.2d 360, 362 (1977). However, where there is ambiguity on the face of the agreement, or its language admits of differing interpretations, extrinsic evidence is admissible "to clarify and explain the document." *Id.* Where parol evidence directly contradicts either the language, or the purpose of a written contract, it is inadmissible. *Anderson v. Preferred Stock Food Markets*, 175 Ariz. 208, 212–213, 854 P.2d 1194, 1198–1199 (Ct.App.1993). Where the extrinsic evidence is generally consistent with the terms of the contract, it may be admitted. *Id.* at 213, 854 P.2d at 1199.

■ The plaintiffs argue that the October 24, 1988, fee letter says nothing about a

contingent fee agreement. The plaintiffs contend that, under Arizona law, the defendants should be precluded from offering extrinsic evidence to vary or add to the terms of the written agreement. They assert that if the parties had wanted to make the plaintiffs' fee contingent on the success obtained in the share case, or contingent on Johnson and Lesher's representation of the defendants to the conclusion of the share case, the parties would have included a contingency in their written fee agreement.

In the defendants' response, they claim that there are terms in the fee agreement which are unclear. They contend that they should be permitted to introduce extrinsic evidence to assist the jury in determining the meaning of the ambiguous terms of the fee agreement. Specifically, the defendants assert that that the statement in the fee agreement that Johnson would provide the defendants with a bill "[w]hen concluded" is ambiguous. They further assert that the method of calculation of the bill is not elicited in the written agreement.

■ Arizona courts employ a two-step process when considering the admissibility of extrinsic evidence. *Taylor v. State Farm Mutual Auto. Ins., Co.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1138 (1993). The court must first consider the proffered evidence "to determine the extent of integration, illuminate the meaning of the contract language or demonstrate the parties' intent." *Id.* The court must eliminate evidence that has "no probative value in determining the parties' intent." *Id.* In the second step, the court must preclude the admission of proffered evidence which would vary or contradict the written agreement. *Id.*

The defendants seek to offer evidence of conversations and correspondence that members of the outside group had with Mr. Johnson to show that the defendants had a contingent fee agreement with Johnson. I believe that such evidence is probative of the parties intent.

The primary question raised by this motion involves the second step of the Arizona parol evidence analysis. The court must determine whether the defendants are seeking to add to or modify the terms of the written agreement through the introduction of extrinsic evidence. In my opinion, some portions of the fee letter are ambiguous. It is not clear what the parties meant by "[w]hen concluded." It is also not clear how the bill was to be calculated, as the letter states that Johnson "does not charge hourly rates." Extrinsic evidence of an oral condition outside of a written agreement has been found admissible where such evidence did not contradict the terms of the written agreement. *See Preferred Stock*, 175 Ariz. at 213, 854 P.2d at 1199 (extrinsic evidence admissible to show that obligation to perform on written guaranty was subject to oral condition).

The court may admit evidence for interpretation of the written agreement only if such evidence does not contradict the written agreement. *Taylor*, 175 Ariz. at 153, 854 P.2d at 1138. The parol evidence which the defendants seek to put before the jury does not contradict the language of the written agreement; rather, the evidence may clarify the meaning of some terms of the agreement and also shed light on the parties' intent. Therefore, I believe that the defendants should be permitted to offer extrinsic evidence of a contingent fee agreement.

### ORDER

Therefore, IT IS ORDERED that the plaintiffs' "motion in limine re extrinsic evidence of contingency" be and hereby is denied, with costs.

APPENDIX