NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHRIS BESS, et al., *Plaintiffs/Appellants*,

*v.*

MARK SPENO, et al., *Defendants/Appellees*.

No. 1 CA-CV 18-0009
FILED 10-30-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-052880
The Honorable Susan M. Brnovich, Judge
The Honorable Thomas L. LeClaire, Judge (Retired)

**AFFIRMED IN PART; REMANDED IN PART**

COUNSEL

Goldman & Zwillinger PLLC, Scottsdale
By Mark D. Goldman, Carolyn J. Goldman
*Counsel for Plaintiffs/Appellants*

Buchalter, PC, Scottsdale
By Glenn B. Hotchkiss
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

¶1            Chris Bess, et al. ("Plaintiffs") appeal the superior court's judgment in favor of Mark Speno, et al. ("Defendants").[1]  For the following reasons, we affirm but remand for the limited purpose of allowing the superior court to determine whether Defendants have paid their appropriate share of expenses.

## FACTS AND PROCEDURAL HISTORY

¶2            Plaintiffs and Defendants collectively funded eight loans secured by deeds of trust on commercial real property.  For each loan, the parties entered a Beneficiary Operating Agreement, which took the same form for all eight loans (collectively, "the Agreements").  The Agreements provide that a 51% majority vote binds the group in making certain decisions.

¶3            After the borrowers defaulted on the loans, Plaintiffs and Defendants foreclosed and purchased eight properties ("the Properties") at trustee's sales.  The deeds conveyed ownership to Plaintiffs and Defendants as tenants in common according to each party's undivided interest in the Properties.  After taking ownership, Plaintiffs, who collectively own a majority interest in each property, desired to hold the Properties until the market improved.  Defendants, who own a minority interest in each property, wanted to sell the Properties.

¶4            Unable to resolve their dispute, Plaintiffs filed a complaint in superior court, seeking a declaration that the Agreements require Defendants to abide by the majority's decision.  *See* Ariz. Rev. Stat. ("A.R.S.") § 12-1832 (authorizing individuals holding an interest in a deed or written contract to obtain a declaration of rights).  Defendants counterclaimed, requesting a declaration that the Agreements are unenforceable and seeking partition of the Properties by sale.  *See* A.R.S. § 12-1211 (authorizing a co-owner of real property to compel partition).

¶5            Following oral argument on the parties' competing declaratory judgment claims, the superior court (the Honorable Thomas L. LeClaire) ruled that, although the Agreements are valid and enforceable, they do not address "any rights, obligations, or procedures for maintaining property ownership after a foreclosure."  The court concluded the law

---

[1]        Plaintiffs are a group of thirty-five individuals and entities. Defendants are Mark Speno, his wife, Ronda Lalonde, and their entities.

governing tenancy in common applied and, therefore, Defendants could seek partition. Thereafter, the court appointed a special real estate commissioner and ordered him to list the Properties for sale.

**¶6** Plaintiffs petitioned this court for special action relief from the sale order. We accepted jurisdiction and granted relief, concluding the superior court had abused its discretion by ordering partition because "the matter was not tried as a partition action" and "the parties presented no evidence regarding partition." *See Bess, et al. v. LeClaire (Speno, et al.)*, 1 CA-SA 15-0076, at *6, ¶ 12 (Ariz. App. Aug. 4, 2015) (decision order).

**¶7** After the parties returned to superior court, Defendants requested partition pursuant to A.R.S. § 12-1215. Plaintiffs did not object. The superior court (the Honorable Susan M. Brnovich) issued a judgment of partition and appointed three real estate commissioners to execute the partition. *See* A.R.S. § 12-1216 (outlining the duties of the commissioners). The commissioners determined the Properties could not be equitably divided, so the court ordered their sale. *See* A.R.S. § 12-1218(A) (directing the court to order a sale if the property cannot be partitioned). Thereafter, the court entered a judgment pursuant to Arizona Rule of Civil Procedure 54(b), awarding attorneys' fees and costs to Defendants.[2]

**¶8** Plaintiffs timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A).

## ANALYSIS

### I. The Agreements

**¶9** Plaintiffs argue the superior court erred in concluding the Agreements do not apply to their decision to hold the Properties post-foreclosure. According to Plaintiffs, "it is abundantly clear on the face of the Agreements that the parties intended the Agreements to apply to their decisions regarding the sales of the Properties." We review *de novo* issues of contract interpretation. *Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010).

**¶10** Our role in interpreting an agreement "is to ascertain and enforce the parties' intent." *Id.* (citing *U.S. W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280 (App. 1996)). In doing so, we "look to the plain meaning of the words as viewed in the context of the contract as a whole."

---

[2] The superior court retained continuing jurisdiction for purposes of overseeing the Properties' sales and the distribution of sale proceeds.

*Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255, ¶ 14 (App. 2017) (quoting *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983)).   Applying these rules of construction, we analyze the Agreements' majority vote provision:

> A) 1% of the investment amount equals 1 vote.
>
> B) An instruction sheet signed by a simpl[e] majority 51% or more shall be binding on the group and may be relied on by anyone we do business with as a valid instruction. . . .
>
> C) This authorization shall be used for:
>
> Making decisions in any and all actions to collect money or other security due, including, but not limited to hiring a Trustee sales agent, changing Trustee sales agents, hiring attorneys for foreclosure or bankruptcy filings, [and] buying insurance to protect uninsured property owned or [on] which we hold liens.[3]
>
> Decisions to hire agents to sell property or goods owned by us collectively.

The Agreements further provide, "We may use any broker to lend, buy a loan, sell a loan, commence a trustee sale to foreclose our security on a loan, sell property and hire and fire agents based on our 51% vote."

**¶11**　　　　The parties entered the Agreements for the stated purpose "of making a loan secured by real estate."   The Agreements expressly provide that a 51% majority vote authorizes decisions relating to: (1) collecting money or other security; (2) hiring a trustee sale agent; (3) hiring attorneys for foreclosures or bankruptcy filings; (4) buying insurance; (5) hiring agents to sell property; and (6) using a broker to lend, buy a loan, sell a loan, commence a trustee sale, sell property, and hire and fire agents.   In contrast, the Agreements do not authorize the parties to rely on a majority vote to hold the Properties for an indefinite time or to maintain, lease, or improve the Properties during any holding period.

---

[3]　　Plaintiffs are correct that the language "including, but not limited to" in this paragraph is the predicate to an inclusive, rather than exclusive, list. However, the qualifying language before that phrase limits the authorization to "decisions in . . . actions to collect money or other security due."

**¶12** Moreover, the Agreements acknowledge that Plaintiffs and Defendants came together for the purpose of making a loan. When the loans were extinguished by foreclosure, the purpose of the Agreements, which were titled "*Beneficiary* Operating Agreement[s]," was fulfilled. (Emphasis added.) The parties were no longer beneficiaries of the deeds of trust. Notably, the trustee's deeds conveyed the Properties to Plaintiffs and Defendants as tenants in common according to their individual percentage ownership.

**¶13** Upon review of the Agreements, we conclude the 51% majority vote provision authorizes only those decisions specifically delineated in the text of the Agreements. The Agreements do not authorize the investors to hold the Properties for an indefinite time based on a majority vote.

### A. Extrinsic Evidence

**¶14** Plaintiffs next argue the superior court "erred in refusing to consider extrinsic evidence to determine the intent of the parties." Relying on *Taylor v. State Farm Mutual Automobile Insurance Co.*, 175 Ariz. 148 (1993), they argue the superior court was required to consider extrinsic evidence of the parties' intent.

**¶15** In *Taylor*, our supreme court explained that Arizona follows the "Corbin view," which permits the admission of extrinsic evidence to assist in contract interpretation. *Id.* at 152-53. The court defined the word "interpretation" as "the process by which we determine the meaning of words in a contract." *Id.* at 152; *see also* Restatement (Second) of Contracts § 200 (1981). Even under the Corbin view, however, extrinsic evidence is not admissible to vary the terms of an agreement. *See Taylor*, 175 Ariz. at 152-53; *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 482 (1977) (holding that the parol evidence rule "prohibits the use of extrinsic evidence to add to, subtract from, vary or contradict the terms of a complete and unambiguous written agreement" (citing *Richards Dev. Co. v. Sligh*, 89 Ariz. 100, 101 (1961))).

**¶16** Before considering extrinsic evidence, the superior court "must determine whether the agreement's language is reasonably susceptible to the proposed interpretation." *See Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (citing *Taylor*, 175 Ariz. at 154-55). This determination is a question of law, which we review *de novo*. *See In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005).

¶17      Plaintiffs did not request an evidentiary hearing in writing regarding their declaratory judgment claim. At oral argument, however, Plaintiffs' counsel claimed,

> [M]y clients can testify and Mr. Speno can testify that the intent of the parties, when they entered into this agreement, was to govern all the decisions down the road that pertain to the investment in these loans, and clearly it applies to what would happen if the parties ended up taking the property back and becoming owners of the property.

Even assuming Plaintiffs' request for an evidentiary hearing was sufficient, the proffered testimony, if true, would vary the terms of the Agreements, adding additional decisions to which the majority vote provision would apply. Plaintiffs' evidence does not help us *interpret* the meaning of the Agreements' language; it *adds* to the terms of the Agreements. *See Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, 639, ¶ 16 (App. 2008) (stating that it is not the court's role "to alter, revise, modify, extend, rewrite or remake an agreement" (quoting *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966))). Accordingly, exclusion of the proffered evidence was appropriate.

### B.    *Alteration of Statutory Rights*

¶18      Plaintiffs further argue that parties "may alter their rights under Arizona laws through their contracts." They contend that Plaintiffs and Defendants altered their rights as tenants in common "by agreeing instead that their co-ownership rights in the Properties would be governed by the 51% majority vote provision in the Agreements." As explained above, the Agreements did not authorize a majority decision to hold the Properties. Therefore, the Agreements did not alter Defendants' right to seek partition of the Properties. *See* A.R.S. § 12-1211. Accordingly, we affirm the superior court's decision as to this issue.

### II.    *Attorneys' Fees in the Superior Court*

¶19      Plaintiffs also argue the superior court erred "in ruling that Defendants were the 'prevailing party' for purposes of awarding attorney[s'] fees and costs."

¶20      The superior court may award reasonable attorneys' fees to the successful party in an action arising out of contract. A.R.S. § 12-341.01(A). When there are multiple claims, and both parties have succeeded in part, a court may utilize a "percentage of success factor" or a "totality of the litigation" test. *Schwartz v. Farmers Ins. Co. of Ariz.*, 166 Ariz.

33, 38 (App. 1990). As a general rule, we review an award of attorneys' fees for an abuse of discretion. *See Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 222, ¶ 25 (App. 2012).

**¶21** Here, the superior court exercised its discretion to award Defendants their attorneys' fees. The court acknowledged that both Plaintiffs and Defendants were successful in part but concluded that, under the "totality of the circumstances," Defendants were the successful party. Finding no abuse of discretion, we affirm the awards.

### III. Additional Issues

**¶22** Plaintiffs next argue the superior court failed to rule on several issues raised by their pleadings.

#### A. Attorneys' Fees for Foreclosure and Bankruptcy Filings

**¶23** Plaintiffs argue the superior court did not determine whether Defendants were required to pay their proportionate share of attorneys' fees incurred to prosecute foreclosures and handle bankruptcy filings as well as "other matters involving the Loans and the Properties."

**¶24** The Agreements authorize Plaintiffs to rely on a majority vote to hire attorneys "for foreclosure or bankruptcy filings" and require Defendants to pay their share of those expenses. On remand, the superior court shall conduct proceedings to determine whether Defendants have paid these expenses and, if not, order payment of the same with applicable interest.

#### B. Tax Penalties and Interest

**¶25** Plaintiffs also argue the superior court did not determine whether Defendants owed penalties and interest arising from Defendants' failure to make timely tax payments. The court did rule, however, that Defendants fully paid the delinquent taxes on six of the eight Properties. The court then ordered that, for the remaining two properties, the parties should pay "the taxes, interest, and penalties, imposed by the applicable governmental entity or entities, equally and proportionately to the percentage interest held by that party." To the extent Plaintiffs seek enforcement of the superior court's order, they must do so in superior court.

C.      *Leases*

**¶26**        Finally, Plaintiffs seek damages caused by Defendants' objection to grazing and cell phone leases.  The superior court determined the Agreements did not authorize Plaintiffs to lease the Properties in reliance on a majority vote.  We affirm that ruling.  Accordingly, Plaintiffs are not eligible for their claimed damages.

IV.      *Attorneys' Fees on Appeal*

**¶27**        Both parties seek attorneys' fees on appeal pursuant to A.R.S. § 12-341.01.  In the exercise of our discretion, we deny both parties' requests. We award taxable costs to Defendants upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶28**        For the foregoing reasons, we affirm the superior court's judgment, but remand this matter to the superior court for the limited determination of whether Defendants owe their share of expenses related to foreclosures and bankruptcy filings.



AMY M. WOOD • Clerk of the Court
FILED:  AA