## In re JACKSON LOCKDOWN/MCO CASES.

No. 81–72151.

United States District Court, E.D. Michigan, S.D.

Sept. 30, 1985.

---

Martin Geer, of Kessler & Geer, Ann Arbor, Mich., Neal Bush, of Bush, Bennett & Magid, Detroit, Mich., for plaintiffs.

Brian MacKenzie, Asst. Atty. Gen., for the State of Mich., Lansing, Mich., for defendants.

Eileen Nowikowski, of Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C., Detroit, Mich., for defendant Mich. Corrections Organization, and various prison guards sued individually and in their official capacity.

Jane Garrett, of Schureman, Frakes, Glass & Wulfmeier, Detroit, Mich., for defendants Jeffrey Schoendorf and William Schnarrs, prison guards sued individually and in their official capacity.

## OPINION AND ORDER APPROVING PROPOSED CONSENT JUDGMENT

COHN, District Judge.

### I.

#### A.

Before me for approval is a proposed consent judgment resolving this class action for injunctive and other relief arising out of the May, 1981 riots and post-riots lockdown at the State Prison of Southern Michigan at Jackson (SPSM). On April 11, 1985, I certified a class of between 6,000 and 10,000 persons, all of whom were under the Michigan Department of Corrections' jurisdiction and prisoners at SPSM at any time from May 21, 1981 through August 31, 1981.[1] There are forty-eight named plaintiffs who have filed thirty-five cases in this Court, asking for relief as a consequence of alleged injuries arising out of the riots and lockdown. *See* Appendices A and B. The defendants are Perry Johnson, former Director of the Michigan Department of Corrections; Barry Mintzes, the Warden at SPSM during the May-August, 1981 period; the Michigan Corrections Organization (MCO), the labor organization that represents the corrections officers at SPSM; various of MCO's officers; and a number of corrections officers at SPSM during the May-August, 1981 period.[2]

---

**1.** This is a "settlement class." Concern has been expressed over such procedure. *See Manual for Complex Litigation* 1–Pt.2 *Moore's Federal Practice* ¶ 1.46 (1984); *see also Manual for Complex Litigation Second* § 30.4.5 (Draft Feb. 1985). *In re Bendectin Products Liability Litigation,* 749 F.2d 300 (6th Cir.1984), suggests that under appropriate circumstances, as for example where there is a proved limited fund for recovery, a settlement class is in order. This litigation represents such a circumstance. That the Stipulation to Entry of Consent Judgment was filed by the parties on the same date as the Order Granting Class Certification does not preclude this settlement. *See Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982), *cert. denied sub nom. Coyne v. Weinberger,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

**2.** Johnson and Mintzes are represented by the Attorney-General of Michigan. Defendants William Schnarrs and Jeffrey Schoendorf are represented by separate lawyers. Different lawyers

The pertinent events of the May-August, 1981 period and the principal allegations of plaintiffs are described in detail in my opinion in *In re Jackson Lockdown/MCO Cases*, 568 F.Supp. 869 (E.D.Mich.1983), which denied motions to dismiss and MCO's motion for summary judgment, and in Judge Stewart Newblatt's opinion in *Walker v. Johnson*, 544 F.Supp. 345 (E.D.Mich. 1982), *aff'd in part, rev'd in part sub. nom Walker v. Mintzes*, 771 F.2d 920 (6th Cir.1985), which dealt with claims for injunctive relief regarding post-riot restrictions on prisoners' activities at SPSM.

The two cases are different. In Judge Newblatt's case, the plaintiffs sought relief against officials at SPSM from restrictions imposed in the lockdown. In this case, plaintiffs seek relief against defendants who they allege caused the riot and subsequent lockdown. In denying summary judgment to MCO, I explained why Judge Newblatt's decision was not *res judicata* of the claims in this case.

### B.

On April 11, 1985, as well as certifying the class, I held a preliminary hearing on a stipulation to enter a consent judgment resolving all of the claims in this litigation. I also entered an order approving the form and manner of notifying the class members of a hearing on the proposed consent judgment on June 14, 1985. The proposed consent judgment had been negotiated and approved by the lead lawyers appointed in Pre-Trial Order No. 3 for the named plaintiffs.

Proofs of service consistent with the order for notification have been filed. I am satisfied class members have been properly notified of the proposed settlement, thus satisfying the prerequisite for class settlements found in Fed.R.Civ.P. 23(e).

### C.

A hearing was held on the proposed consent judgment on June 14, 1985, at which lawyers for the various parties made state-

represent MCO, its officials, and the remaining

ments on the record describing the background of this litigation, the negotiations for settlement, the reasons for settling, and the appropriateness of the settlement. Two class members appeared in person at the hearing and asked questions. Numerous letters and *pro per* motions were received from various class members regarding the proposed settlement, which will be described later in this opinion.

### D.

I am fully familiar with this litigation. I have entered two orders regarding venue, denied motions to dismiss and a motion for summary judgment, declined a certification to the Court of Appeals under 28 U.S.C. § 1292(b), and entered nine pre-trial orders. These pre-trial orders trace the history of this litigation from the initial assignment to my docket for pre-trial purposes of fifteen cases filed in 1982 to Pre-Trial Order No. 9 in which I consolidated for trial some twenty-eight cases filed before December 31, 1983, as listed in Appendix A. Following entry of Pre-Trial Order No. 9, the parties began to seriously discuss settlement. I assisted in these discussions. *See Seigal v. Merrick*, 590 F.2d 35, 39 (2nd Cir.1978).

### II.

### A.

There are special considerations that obtain with regard to my consideration of the proposed consent judgment and my analysis of the relief requested, the terms of the proposed consent judgment, its accomplishments, and the objections.

■ Federal courts are fully familiar with prisoner litigation and the ease with which such cases may be commenced. The individual cases filed before December 31, 1983, which were consolidated by Pre-Trial Order No. 9, and the individual cases filed subsequently, listed in Appendix B, which were stayed by Pre-Trial Order No. 9, are no exception. They are in many ways a cultural response to the judicial presence.

variously named defendants in the 35 cases.

The potential for additional cases being filed is a consideration. Mich.Stat.Ann. § 27A.5851 [M.C.L.A. § 600.5851] tolls the three year statute of limitations for personal injuries for a person in custody until one year after the custodial disability is removed.[3] Therefore, as to certain prisoners at SPSM, there is effectively no statute of limitations as to claims arising out of the riots and lockdown and in theory defendants are forever exposed to the hazards of litigation.

### B.

Following the entry of the scheduling order of March 3, 1982 (which was effectively the first pre-trial order), amended complaints were filed in the cases listed in Appendix A. The First Amended Complaint in *McDonald*, No. 81–40192, is a paradigm and fairly describes the named plaintiffs' objectives in this litigation. The first prayer for relief asks for a declaratory judgment declaring that "defendants' acts and omissions, as well as the totality of the conditions of confinement at SPSM violated" various rights of the plaintiff. The second prayer for relief asks for a money judgment for damages; the description of specific injuries, however, is quite sparse. The third prayer for relief asks for costs and expenses, and the fourth prayer is for "such other further relief as [the Court] deems just and proper." I conclude from a fair reading of this amended complaint that it is directed principally to the "illegal job action on May 22, 1981" by MCO and its officers and an alleged conspiracy between MCO and its officers and the officials at Jackson to cause an illegal lockdown.

### C.

The proposed consent judgment involves:

1. Settlement of all claims by members of the class arising out of the May, 1981 riots and the subsequent lockdown at SPSM.

2. Dismissal with prejudice of all pending claims against the defendants.

3. Each plaintiff in the cases listed in Appendix A is to receive $2,000. Each of these cases was filed and amended before December 31, 1983. Each plaintiff in the cases listed in Appendix B is to receive $500. Eight of these complaints were filed before December 31, 1983 but were not amended; twelve were filed after December 31, 1983.

4. A Special Injury Fund in the amount of $20,000 is to be established for distribution upon application and hearing to individual class members who have suffered serious, continuing, medically-certifiable injuries as a result of the acts and occurrences giving rise to this litigation.

5. A $50,000 fund for the benefit of the class is to be established to be used as decided on by the parties or by me if the parties are unable to agree.

6. MCO is to be enjoined from authorizing, ratifying, or participating in an unauthorized lockdown at SPSM in the future.

7. Upon application and subject to my approval as to reasonableness, plaintiffs' counsel are to receive up to $50,000 for fees and out-of-pocket expenses.

The $50,000 fund and $20,000 of the fees and expenses will be paid by the Department of Corrections through defendants Johnson and Mintzes, while the balance of the settlement monies will be paid by MCO.

### D.

The settlement is a singular accomplishment. First, it places MCO under a perma-

---

**3.** An action under 42 U.S.C. § 1983 involves a claim for personal injury. *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Mich.Stat.Ann. § 27A.5851 [M.C.L.A. § 600.-5851], which tolls the statute of limitations for a person in custody, is constitutional. *Hawkins v. Justin,* 109 Mich.App. 743, 311 N.W.2d 465 (1981). At least one federal court has refused to apply tolling to a prisoner civil rights case on the grounds it was "inconsistent with federal policy and law, pursuant to 42 U.S.C. § 1983" *Campbell v. Guy,* 520 F.Supp. 53 (E.D.Mich. 1983), *aff'd,* 711 F.2d 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 190 (1984). Application of that rule to this litigation would moot the class claims leaving open only those cases listed in the appendices.

nent injunction enjoining it from ever engaging in an unauthorized lockdown at SPSM. Although the proposed consent judgment is not an adjudication that MCO instituted or participated in an unauthorized lockdown at SPSM, the willingness of MCO to accept this stricture makes it reasonably certain that no such activity will ever even be considered by it. Thus, the injunctive relief is likely to lead to a more reasoned relationship between the management at SPSM and MCO and its members, something that will benefit the plaintiff class. Second, the willingness of the Department of Corrections, through defendants Johnson and Mintzes, to participate in the creation of the $50,000 fund and contribute towards the payment of lawyers' fees and expenses to effect a settlement of this litigation is a further contribution to a more reasoned relationship between the management at SPSM and MCO and its members.[4] Third, MCO's willingness to participate in the Special Injury Fund as well as to compensate the named plaintiffs demonstrates a willingness to assist in putting the May-August, 1981 events at SPSM to rest. Whatever the current conditions at SPSM and whatever the current relationships between the management at SPSM, MCO and its members and the current prisoner population, the continued existence of this litigation is a detriment to the environment at SPSM.

### III.

#### A.

■ As explained in *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983), in order to approve the consent judgment I must make a finding that its terms are fair, reasonable, adequate, and consistent with the public interest. *See Manual for Complex Litigation,* 1-Pt. 2 *Moore's Federal Practice* ¶ 1.46 (1984); W. Schwarzer, *Managing Antitrust and Other Complex Litigation* § 9–5 (1982). I must be satisfied

that the preferential treatment of the named plaintiffs is fair. *See Holmes v. Continental Can Company,* 706 F.2d 1144, 1147 (11th Cir.1983); *Franks v. Kroger Co.,* 649 F.2d 1216, 1225–26 (6th Cir. 1981); *In re Beef Industry Anti Trust Litigation,* 607 F.2d 167 (5th Cir.1979), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). I must also be satisfied that the *res judicata* effects of the settlement on all members of the class is fair. *See Ivy v. Dole,* 610 F.Supp. 165 (E.D.Va.1985).

#### B.

■ The settlement is consistent with the public interest. "[T]here is an overriding public interest in settling and quieting litigation". *VanBronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976). "Voluntary out-of-court settlement of disputes is highly favored in the law." *In re "Agent Orange" Product Liability Litigation,* 597 F.Supp. 740, 758–59 (E.D.N.Y. 1984).

While the *Manual for Complex Litigation,* 1–Pt.2 *Moore's Federal Practice,* previously recommended against the use of the class action device in prisoner cases, the current version notes that subsequent court decisions have held class actions to be of particular use in many types of prisoner actions. *Id.* ¶ 1.401, at 30 (2d ed. 1984). "The courts have generally recognized that the class action may be desirable as a method of obviating the vast numbers of actions that prisoners can generate on the same or similar issues." *Id.*

For the reasons that follow, I am satisfied that the terms of the consent judgment are fair and reasonable. I am also satisfied that the preferential treatment of the named plaintiffs is fair and that the *res judicata* effect of the settlement on class members is fair.

---

**4.** The Governor's Special Committee on Prison Disturbances found evidence of deep-seated discord and distrust on the part of management and line staff towards each other in the Depart- ment of Corrections and at Jackson. To the extent the cooperative effort at settlement of this litigation diminishes this discord and distrust, the plaintiff class receives a benefit.

## IV.

### A.

While I have no doubt that the amended complaints, as exemplified in *McDonald, supra,* stated claims on which relief can be granted, *In re Jackson Lockdown/MCO Cases, supra,* I have not expressed an opinion on the factual merits of the claims in this litigation. None of the defendants has filed a motion for summary judgment directed to the merits.

Substantial discovery has been undertaken. Eighteen named plaintiffs have been deposed. With the possible exception of four named plaintiffs, these depositions disclose that at most only minor physical injuries were suffered by any of these eighteen named plaintiffs. As to the four named plaintiffs who suffered possible physical injuries, one claim has already been adjudicated and it appears that independent medical evidence exists to refute the other claims. MCO's detailed analysis of claimed injuries as of January 26, 1984 suggests the $20,000 special injury fund is more than adequate. Nothing in the papers filed objecting to the proposed consent judgment suggests the $20,000 will not be sufficient.

The individual defendants appear to be uncollectible. MCO certainly has only limited funds. This representation has been repeatedly made by the lawyers for MCO and nothing in the record refutes it. Defendants Schnaars and Schoendorf are salaried corrections officers and would likely be dismissed on summary judgment if this litigation proceeds.[5]

The liability of Johnson and Mintzes is highly problematic.[6] The Governor's Special Committee on Prison Disturbances in its August 4, 1981 report found that the immediate factor that led to the May 22, 1981 riot at SPSM "was the threatened unauthorized lockdown by prison guards" and that the May 26, 1981 riot would likely have been averted "if appropriate management steps had been taken that morning." To the extent that Johnson and Mintzes are implicated in that view of the May 26, 1981 riot, cases such as *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Wilson v. Beebe,* 770 F.2d 578 (6th Cir. 1985); *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982), *reh'g denied,* 673 F.2d 152 (1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); and *Hayward v. Procunier,* 629 F.2d 599 (9th Cir. 1980), *cert. den.,* 451 U.S. 937, 101 S.Ct. 2015, 68 L.Ed.2d 323 (1981), impose formidable barriers to establishing liability. Additionally, the good faith immunity defense as defined in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) suggests a finding of liability on the part of Johnson and Mintzes is highly problematic. Lastly, a motion for separate trials under Fed.R.Civ.P. 42(b) might have to be granted as to them. *See In re Jackson Lockdown/MCO Cases, supra,* 568 F.Supp. at 878.

The remaining defendants are also salaried corrections officers. Although one or more of them may have some direct responsibility for the unauthorized lockdown that led to the May, 1981 riots, a money judgment obtained against any of them is likely to be only symbolic.

### B.

In response to the notice of the June 14, 1985 hearing, I received 111 letters objecting to the proposed consent judgment, 78 letters of inquiry about its terms and conditions, 213 letters asking that the writer's name be added to the list of named plaintiffs, 23 letters that are irrelevant to the matter at hand, and 150 letters from residents of the Michigan Correctional Facility at Kincheloe claiming injuries and opposing the settlement. I have also received 9 mo-

---

5. Schnarrs was not on duty on May 22, 1981. Schoendorf is not a member of MCO.

6. Johnson and Mintzes, since they are represented by the Attorney General of Michigan, presumably would be indemnified for a money judgment against them.

tions to join this litigation or intervene as a party-plaintiff, a motion to join listing 32 names, and a complaint with 8 names, which includes a motion to certify a class and to join this litigation. All of these letters and motions were filed *pro per.*

I have carefully reviewed the papers described above. Most of the objections are directed to the insufficiency of the settlement amount and the unfairness of the pattern of distribution.[7] There are 142 objections, by my count, to the fact that only named plaintiffs and members of the class who can show specific verifiable injuries receive money. Sixty-four objections are directed to the fact that there is no provision for payment of damage to property. Twenty-nine objections are directed to the lack of an award of money damages for violation of constitutional rights during the lockdown. There are objections to the size of the $50,000 fund and the fact that only $500 is to be paid to the named plaintiffs listed in Appendix B. Finally, there are twelve objections to the amount of the Special Injury Fund. These objections state no specific injury on the part of the objectors; the descriptions of alleged injuries are conclusory and unsupported.

The objections to the injunctive relief part of the proposed consent judgment are unfocused. Thirty-two objections argue that relief should extend to unconstitutional conditions of confinement, while several urge that the individual defendants should be discharged as part of any settlement.

There are also objections directed to the class certification. Fifty-eight objections argue against a "non-opt out" class. Twelve objections say the notice was insufficient because many class members have either been released or are in other institutions. Several objections relate to the general fairness and timeliness of the class certification. Still other objections say that the class representatives were overly concerned with themselves. Lastly, eight objections state that the writers were led to believe they would share in any damage award and therefore did not file individual cases.

### C.

Most of the objections are answered in this opinion, particularly with regard to the preferential treatment given named plaintiffs in the proposed consent judgment. Importantly, none of the objections states any specific injury that was suffered in the riots or lockdown for which compensation may be denied because of the settlement. The only objections not otherwise discussed in this opinion are directed toward the fact that the proposed consent judgment does not allow for damages to property. The $50,000 fund, the disposition for which is to be determined by the parties or by me if they are unable agree, stands as compensation for property damage. Obviously, considerable property belonging to class members was destroyed in the riots. I am not aware how claims for property damages were handled administratively, if at all. Now, some four years after the riots, I am satisfied that the creation of this fund and its use in the manner specified in the proposed consent judgment is a fair way of compensating class members as a whole for loss of property under the circumstances of this litigation.

### V.

### A.

■■■ The preferential treatment to the named plaintiffs must be viewed in the context of this litigation. The named plaintiffs who filed their cases prior to Decem-

---

7. So long as proper notice is given to the class, an "objector cannot opt out of a settlement he or she feels is unfavorable." *In re "Agent Orange" Product Liability Litigation,* 597 F.Supp. 740, 759 (E.D.N.Y.1984). In that case, a non-opt out settlement class was certified for plaintiffs seeking punitive damages, and a settlement temporarily approved, in light of the burden on the courts of allowing each claimant to litigate separately and in light of the reasonableness of the settlement. The court there noted that a "substantial number [of objections] were based on a lack of a full appreciation of the cases's legal and factual problems...." *Id.* My review of the objections received from members of the SPSM class leads me to a similar conclusion.

ber 31, 1983 and who are represented by counsel and filed amended complaints are each to be paid $2,000. The eight named plaintiffs who filed their cases before December 31, 1983 and who did not file amended complaints, and the twelve named plaintiffs who filed their cases after December 31, 1983, are each to receive $500. By May 1, 1984, it was common knowledge at SPSM that settlement discussions in this litigation were underway that might result in a money award.

Although disproportionate benefits are suspect, *Franks v. Kroger Co., supra,* the Sixth Circuit has recognized the propriety of rewarding members of a class who protested and helped bring rights to a group who had been victims of discrimination. Active protesters were contrasted to protesters who were merely passive and indicated no particular desire to bring an end to a discriminatory policy. *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 420 (6th Cir.1974). Furthermore, objections by members of a mandatory class to the interclass distribution of the settlement amount are not sufficient grounds for disapproving the settlement, so long as the gross settlement amount is reasonable for the class as a whole. *In re "Agent Orange" Product Liability Litigation,* 597 F.Supp. 740, 753 (E.D.N.Y.1984).

Here, the named plaintiffs listed in Appendix A who are represented by counsel and filed amended complaints and who aggressively resisted the motions to dismiss and for summary judgment and who actively pursued this litigation certainly stand apart from the class as a whole. The named plaintiffs listed in Appendix B who filed their cases before the possibility of settlement became widely known stand apart from the class as a whole in a willingness to come forward in protest; their suits incrementally increased the pressure on defendants. However, the second group of named plaintiffs played a significantly lesser role in this litigation.

Even before the proposed consent judgment was formally presented to me, I received protests as to the progress of the negotiations. In one of the protest letters the writer was quite candid in stating:

The undersigned were aware of the case from its inception and its progress.... The undersigned did not file until there was a strong indication of monetary damages because of fear of retaliatory practices of the MCO union and its representatives.

The named plaintiffs who stepped forward are responsible for the results achieved in the settlement of this litigation and are entitled in the proposed consent judgment to be preferred over the class as a whole. I find both the payment and differentiations in payment as provided for in the proposed consent judgment fair under the circumstances of this litigation.

### B.

The second concern to be addressed is the conclusive effect of the proposed consent judgment on members of the plaintiff class, as members of the plaintiff class are not permitted to opt out as allowed under Fed.R.Civ.P. 23(b)(3). It should be noted that Rule 23(c) expressly limits mandatory "opt out" rights to class certification under Rule 23(b)(3). The class was certified under Rule 23(b)(2). As such, exclusion rights are not required.

The principal focus of this litigation is for injunctive relief; monetary damages are secondary when the litigation is viewed as a whole. The prerequisites for maintaining a class action, as set forth in Fed.R. Civ.P. 23(a), are clearly satisfied. Obviously, every member of the class cannot be joined as a party plaintiff. Second, as I noted in my Pre-Trial Order No. 9, common questions of law and fact substantially predominate, *i.e.,* the scope of the legal responsibility of the individual defendants and the role each played in the May-August, 1981 events at SPSM. Third, the claims of the named plaintiffs are typical of the claims of the class; the defendants certainly acted for the most part in a manner applicable to the class as a whole. Lastly, the named plaintiffs can fairly and adequately protect the interests of the

class. The lead counsel appointed under Pre-Trial Order No. 3 are two of the most prominent plaintiff prisoner civil rights lawyers in Michigan.

■ · The requirements for certification under Rule 23(b)(2) are also satisfied here. Because MCO and the other defendants acted on grounds generally applicable to the class, injunctive and declaratory relief with respect to the whole class is appropriate.

Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(1)(B) are also implicated. Because the predominant focus of the claims is for injunctive and declaratory relief, there is a danger that individual suits could result in conflicting or varying injunctions which would establish incompatible standards of conduct for the parties opposing the class. The Rule 23(b)(1)(A) class action is designed to avoid inconsistent adjudications in identical fact situations. Mandatory certification is thus preferred over 23(b)(3)'s "opt out" provisions where there are claims for both monetary and injunctive relief. *Reynolds v. National Football League,* 584 F.2d 280, 283–84 (8th Cir.1978). Therefore, the proposed settlement could be approved under Rule 23(b)(1)(A). Furthermore, there is a limited fund available for damage claims in light of the likely lack of collectibility on the part of MCO and the individual defendants with the exception of Johnson and Mintzes. Their liability, as explained above, is highly problematic. Therefore, the proposed settlement could also be approved under Fed.R.Civ.P. 23(b)(1)(B).

Because of the concerns over mandatory settlement classes, however,[8] it is worth exploring at greater length why these cases are deserving of "non-opt out" treatment.

1.

There have been admittedly few certifications of mandatory classes in the mass tort field. *See, e.g., In re Asbestos School Litigation,* 104 F.R.D. 422 (E.D.Pa.1984) (appeal pending); *In re Agent Orange Product Liability Litigation,* 100 F.R.D. 718 (E.D.N.Y.1983), *mandamus denied sub nom. In re Diamond Shamrock Chemicals Co.,* 725 F.2d 858 (2d Cir.1984), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984); *Coburn v. 4–R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977), *mandamus denied sub nom. Union Light Heat, and Power Co. v. United States District Court,* 588 F.2d 543 (6th Cir.1978), *cert. dismissed,* 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla. 1973), *aff'd,* 507 F.2d 1279 (5th Cir.1975). The reluctance of the courts to certify "non-opt out" classes in the mass tort field is understandable, as courts are reticent to preclude future claims by potential plaintiffs who may not yet know they have been harmed, *i.e.,* because of long latency periods associated with certain products, or because it is not clear that the defendants' funds will be insufficient to compensate all plaintiffs. However, such a problem does not present itself here. The May riots and the post-riots lockdown were finite events whose "victims" are already aware of their harms. Also, I am satisfied that all members of the class have received adequate notice and that the funds established by the representative plaintiffs for all other members of the class are a fair and sufficient recovery for any harm done, which would not be the case were I to allow these claims to be litigated separately.

Despite the paucity of unreversed certifications, appellate courts that have considered the issue have agreed that, in the proper circumstances, mandatory certification may be used even in mass tort cases. *See, e.g., In re Bendectin Products Liability Litigation,* 749 F.2d 300 (6th Cir.1984); *In re Northern District of California, Dalkon Shield IUD Product Liability Litigation,* 693 F.2d 847, 851 (9th Cir.1982), *cert. denied sub nom. A.H. Robins Co., Inc. v. Abed,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982), *cert. denied sub nom. Johnson v. Stover,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383

8. *See supra* Note 1.

(1983) (certification denied on the narrow grounds that the district court's certification violated the Anti-Injunction Act); *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n. 9 (9th Cir.1976). Attempts at mandatory class certification in mass torts have failed largely because of the inability of the proponent of the certification to establish the existence of a "limited fund." Failure to prove how large the fund was or how large the projected recoveries would be, or both, has been fatal. *In re Bendectin Products Liability Litigation, supra; In re Dalkon Shield Product Liability Litigation, supra; Payton v. Abbott Labs,* 83 F.R.D. 382 (D.Mass.1979), *order vacated,* 100 F.R.D. 336 (1983). Such is not the case here.

Rather than allowing the fund to be exhausted by litigation expenses and to precipitate unjust percentage recoveries to early arriving claimants, a "non-opt out" settlement allows fair recovery of the limited fund by all claimants. In mass torts litigation, such a situation does not ordinarily exist because the combination of insurance proceeds and the assets of the defendant generally eliminate the risk of exhaustion of the assets of a defendant from one defective product. This is distinguishable from the situation arising out of the events at SPSM; even if the plaintiffs could hurdle the barrier imposed by the problematic liability of several of the defendants, the cost of repeated litigation and recoveries would clearly exceed their assets and preclude recovery by subsequent plaintiffs. Where a limited fund exists in a particular litigation and the projected number of claims would exceed the amount of that fund, it is both equitable and reasonable that the mere fortuitousness of one party filing before another should not be the deciding factor in determining the availability of recompense.

The "limited fund" doctrine has been applied or endorsed by many courts as the basis for mandatory certification. *See, e.g., In re Bendectin Products Liability Litigation, supra; In re Dalkon Shield IUD Product Liability Litigation, supra; Reynolds v. National Football League, supra; In re Asbestos School Litigation, supra; In re Agent Orange Product Liability Litigation, supra; Coburn v. 4–R Corp., supra; Hernandez v. Motor Vessel Skyward, supra; Berman v. Narragansett Racing Ass'n,* 48 F.R.D. 333 (D.R.I. 1969) (class action on behalf of 5000 horse owners against race track), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970).

The comments to Fed.R.Civ.P. 23(b)(1)(B) also support the validity of a "limited fund" basis for a "non-opt out" class. Satisfaction of the rule "is plainly the case when claims are made by numerous persons against a fund insufficient to satisfy all claims. A class action by or against representative members to settle the validity of the claims as a whole, or in groups, followed by separate proof of the amount of each valid claim and proportionate distribution of the fund, meets the problem. *Cf. Dickinson v. Burnham,* 197 F.2d 973 (2d Cir.1952) (upholding mandatory class action of group of stockholders where fund was limited), *cert. denied,* 344 U.S. 875, 73 S.Ct. 169, 97 L.Ed. 678 (1952); 3 Moore ¶ 23.09." The consent order in this case is functionally equivalent to the solution described above. The representative prisoner plaintiffs here have settled the validity of their claims with the defendants, receiving an amount I have found to be fair and sufficient to cover all claims for physical and property loss. This fund can be used to achieve "proportionate distribution of the fund" upon "proof of the amount of each valid claim." Short of such a settlement solution, the funds likely to be available would be insufficient to satisfy the claims of all plaintiffs, after litigation costs are taken into consideration.[9]

2.

*In re Bendectin Products Liability Litigation,* 749 F.2d 300 (6th Cir.1984), is a most recent and dramatic attempt to certify a mandatory class of claimants for set-

---

**9.** *See supra* discussion at text § IV.A.

tlement purposes in the Sixth Circuit. The lawsuits there were against the Merrell Dow Pharmaceutical Company, manufacturers of the drug Bendectin, a prescription drug developed to relieve morning sickness in pregnant women. The claims alleged that the drug caused birth defects as a result of children in utero exposure. In imposing a "non-opt out" class, the district judge was clearly attempting to bring some semblance of order to the large number of potential and current claims. The judge certified a mandatory class under Rules 23(b)(1)(A) and (b)(1)(B). Section (b)(1)(A) is designed for class actions involving equitable remedies. It is well accepted, however, that the fact that some plaintiffs may win while others may lose is not within the meaning of Section (b)(1)(A), and the certification on that ground was summarily rejected by the Sixth Circuit.

The certification under (b)(1)(B) gave the Court of Appeals little more difficulty. The Court of Appeals accepted the limited fund theory, noting that "[o]n pure policy grounds, the district judge's decision may be commendable, and several commentators have argued that Rule 23 should be used in this manner. *See, e.g.*, Note, *Class Certification of Mass Accident Cases Under Rule 23(b)(1)*, 96 Harv.L.Rev. 1143 (1983)." 749 F.2d 300, 307. *See also* Seltzer, *Punitive Damages in Mass Tort Litigation: Addressing the Problems of Fairness, Efficiency and Control*, 52 Fordham L.Rev. 37 (1983); Note, *Federal Mass Tort Class Action: A Step Toward Equity and Efficiency*, 47 Albany L.Rev. 1180 (1983). The Sixth Circuit also cited with approval the district judge's prior certification of a mandatory class in *Coburn v. 4-R Corp., supra*. The Sixth Circuit held, however, that there was no evidence of such a limited fund in the *Bendectin* litigation. In fact, the district court had never attempted to determine whether there was a limited fund and had never held a hearing or took any evidence on the subject. As explained above, I have avoided such a result by considering the evidence and making findings regarding the limited fund involved here.

### 3.

The standard for mandatory certification under a limited fund basis is easily met here.

Fed.R.Civ.P. 23(b)(1)(B) itself requires only that there be a "risk" of impairment, not that impairment be conclusively determined. The standard set by the Ninth Circuit in *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973), and reiterated in *In re Dalkon Shield IUD Products Liability Litigation, supra*, forbidding (b)(1) certification in mass tort cases unless separate actions will "inescapably" impair class members' claims, *Dalkon*, 693 at 851; *LaMar*, 489 F.2d at 467, is therefore much more stringent than the rule itself requires. The Sixth Circuit has tacitly rejected such a stringent test, denying a writ of mandamus where a district court judge certified a mandatory class action on the grounds that there was "good reason to believe" that "total judgments might substantially exceed the ability of defendants to respond." *Coburn v. 4-R Corp., supra*. A "probable risk" standard has been adopted by another court. *In re Agent Orange Product Liability Litigation, supra*, 100 F.R.D. at 726. Thus, my finding, based on unrefuted facts, that MCO and the other defendants have insufficient funds justifies a mandatory class.

### 4.

Before considering the adequacy of the settlement, it is worthwhile to distinguish a recent Supreme Court case that may be inappropriately construed as precluding class certification in this case. The recent Supreme Court ruling in *Phillips Petroleum Co. v. Shutts*, — U.S. —, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), bars a mandatory class action under state law for most claims that are wholly or predominately for monetary damages where most members of the class reside outside the state, because due process requires that absent class members be afforded the right to opt out before their claims can be foreclosed by a class action judgment. But the *Phillips Petro-*

*leum* decision is carefully limited to the specific issues presented.

> Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class action lawsuits, such as those seeking equitable relief.

—— U.S. at —— n. 3, 105 S.Ct. at 2975 n. 3. This footnote reveals that the Supreme Court did not intend to bar every mandatory class action that did not afford the right of exclusion. For example, *Phillips Petroleum* does not rule that the opt-out right must accompany class actions seeking injunctive or equitable relief. As I ruled in my Order Granting Class Certification, dated April 11, 1985, the plaintiffs' claims to monetary relief do not predominate over their claims to injunctive and declaratory relief. The Supreme Court did not mandate exclusion rights in such a case. As such, the opinion did not invalidate Fed.R. Civ.P. 23(b)(1)(A).

Likewise, *Phillips Petroleum* does not appear to mandate exclusion rights in limited fund cases. The Supreme Court did not reach the issue of what process is due for monetary claimants to a limited fund, at least in federal court. Thus, the opinion did not invalidate Fed.R.Civ.P. 23(b)(1)(B) either. The Supreme Court's due process concern seems to have been principally over the potential for absent class members being foreclosed without their consent from bringing future claims by virtue of the forum state using its long-arm jurisdiction to conclusively adjudicate the claims of class members living predominately in other states. One underlying premise seems to be that a class plaintiff has the right to choose whether to risk a separate action in hopes of obtaining a larger recovery than he would have received as a member of the class action. But in the situation currently before me, the forum, Michigan, is convenient for most members of the class. Unlike the alleged danger presented in *Phillips Petroleum*, this case does not pose a threat of widespread abuse of a long-arm statute. Further, the claims of some class members will surely be foreclosed because of the limited funds of MCO and other defendants. In such a situation, the stricture of *Phillips Petroleum* is inapplicable, as the "non-opt out" settlement before me acts to assure all plaintiffs of a sufficient recovery, rather than foreclosing the claims of later plaintiffs with false hopes of even greater recoveries.

### C.

The real question as to the conclusive effect of the proposed consent judgment is the adequacy of the $20,000 Special Injury Fund. While under ordinary circumstances Michigan's three year statute of limitations [10] would have flushed out all possible claims for the May-August, 1981 events more than one year ago, its tolling provision leaves open-ended the right to commence suit for persons in custody. There is no way this litigation can be resolved and the May-August, 1981 events at SPSM put to rest without giving the proposed consent judgment preclusive effect. Therefore, it is necessary to find that the Special Injury Fund is adequate to assure that giving preclusive effect to the proposed consent judgment does not deny any potential litigant a reasonable opportunity to obtain compensation for any injury proximately caused by any of the defendants in the May-August, 1981 period as a result of the riots or lockdown. Review of the objections makes clear that the Special Injury Fund is adequate. I find that giving the proposed consent judgment preclusive effect is fair, reasonable, and adequate.

### VI.

I approve the proposed consent judgment in tandem with the necessary implementing orders below and have signed and filed it, bringing this litigation to an end.

IT IS ORDERED that:

1. Within sixty (60) days Defendants Mintzes and Johnson shall prepare and sub-

---

**10.** *See supra* note 3.

mit to the Court for approval a form of notice to class members to be served in the same manner as the notice approved April 11, 1985. The notice shall describe the criteria for making a claim and the manner of obtaining claim forms and the like. These defendants shall also prepare the claim form, which is to be filed with the Clerk of the Court. A reasonable time shall be stated in the notice for filing claims. After the time for filing claims has closed, I will establish an appropriate procedure for determining which claims are valid and how the amounts to be paid are to be determined.

2. The applications for plaintiffs' attorneys' fees as provided for in the Consent Judgment shall be accompanied by a detailed description of services rendered and times spent providing such services.

3. The motions to intervene now pending are DENIED.

SO ORDERED.

### APPENDIX A

| | Civil Action Number | Plaintiff(s) | Date Filed |
|---|---|---|---|
| 1. | 81–40192 | James Earl McDonald | 8–16–81 |
| 2. | 81–72151 | Harty Arthur Hosack | 6–30–81 |
| 3. | 81–72290 | Ronald G. Triplett | 7–8–81 |
| 4. | 81–72425 | James T. Sullivan | 7–15–81 |
| 5. | 81–72502 | Carlton E. J. Rider | 7–21–81 |
| 6. | 81–72753 | Dan B. Ochko | 8–5–81 |
| 7. | 81–73037 | Herbert M. Robideau | 8–21–81 |
| 8. | 81–73038 | Grant G. Glover | 8–21–81 |
| 9. | 81–73039 | Barry Wotring | 8–21–81 |
| 10. | 81–73109 | Robert Gunn | 8–27–81 |
| 11. | 81–73110 | Gary Bedford | 8–27–81 |
| 12. | 81–73111 | James McCoy, II | 8–4–81 |
| 13. | 81–73250 | Albert J. Hartford, Jr. | 9–4–81 |
| 14. | 81–73251 | Oscar L. Coleman | 9–4–81 |
| 15. | 81–73268 | Gustave E. Jannson | 9–8–81 |
| 16. | 81–73269 | Timothy P. Keenan | 8–20–81 |
| 17. | 81–73367 | Adrian K. Childs | 9–11–81 |
| 18. | 81–73620 | Walter L. Reaves, Jr. | 8–12–81 |
| 19. | 81–73841 | Bobby L. Mallory, a/k/a John Mallory | 10–15–81 |
| 20. | 82–70395 | John M. Taylor | 2–4–82 |
| 21. | 82–70789 | Jimmie Bentley | 3–8–82 |
| 22. | 82–70975 | Derrell D. Jackson | 3–18–82 |
| 23. | 82–71531 | Robert Lee Boles, Jr. | 4–6–82 |
| 24. | 83–CV–0345–DT | Michael Lewandowski | 1–31–83 |
| 25. | 83–CV–1974–DT | Henry Burgess, Jr. | 4–3–83 |
| 26. | 83–CV–2198–DT | Lawrence Touson | 6–7–83 |
| 27. | 83–CV–2971–DT | David Wells | 7–22–83 |
| 28. | 84–CV–2532–DT | Patrick C. Sommerville | 4–4–81 |

### APPENDIX B

| | Civil Action Number | Plaintiff(s) | Date Filed |
|---|---|---|---|
| 1. | 81–72155 | Gerald O'Connor Gratton Clarence Barnes Floyd Chambers Robert Law Lawrence Lowe Othea Riles Roy Whitaker James White | 6–30–81 |
| 2. | 84–CV–0002–DT | Phillip A. Phillips | 1–3–84 |
| 3. | 84–CV–0681–DT | Morris Marton Maurice Burton Charles Howard | 2–10–84 |
| 4. | 84–CV–1156–DT | Brent E. Koster David M. Closser | 3–14–84 |
| 5. | 84–CV–1418–DT | Paul D. Duffy, Jr. | 3–28–84 |
| 6. | 84–CV–1430–DT | Paul Moncure Anthony Curry James L. Phillips | 3–28–84 |
| 7. | 84–CV–2532–DT | James L. Covington Carlton D. Mixom | 5–25–84 |