849 F.2d 610
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry WATSY, Plaintiff-Appellant,
v.
Perry JOHNSON, et al., Defendants-Appellees.
 No. 86-1564.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1988.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a prisoner's civil rights action that was dismissed by the district court following entry of a consent decree in a class action brought on behalf of a class of which the plaintiff was a member. The plaintiff argues on appeal that the terms of the consent decree did not foreclose prosecution of his individual claims. He further contends that he is not bound by the consent decree in any event because members of the plaintiff class were not given notice by the "best practicable [means] reasonably calculated under all the circumstances to apprise [them] of the pendency of the action."
 
 
 2
 We find that the terms of the consent decree do foreclose the plaintiff's individual claims. The plaintiff not only received notice of the pendency of the class action, moreover, he took an appeal therein and then settled his individual claims for $500. We shall therefore affirm the judgment of the district court.
 
 
 3
 * This case stems from a 1981 walkout by guards at the State Prison of Southern Michigan ("SPSM"), which walkout was followed by a prison riot and a lockdown. (Descriptions of these events can be found in Walker v. Johnson, 544 F.Supp. 345 (E.D.Mich.1982), aff'd in part, rev'd in part sub nom. Walker v. Mintzes, 771 F.2d 920 (6th Cir.1985), and In re Jackson Lockdown/MCO Cases, 568 F.Supp. 869 (E.D.Mich.1983).) Plaintiff Watsy, an inmate at SPSM, sued the warden and other prison employees for emotional distress and other damages allegedly sustained during and after the lockdown. He complains that food was handed to him in his cell by placing it between two paper plates and turning the plates on their sides to get them through the cell's bars. The resultant spillage attracted insects and rodents. Mr. Watsy says he wanted to shield himself from the vermin by hanging a blanket over the bars, but was prevented from doing so. He alleges generally that he was deprived of minimal cleanliness, sanitary conditions, exercise, and hygiene, and was denied the use of a law library and telephone.
 
 
 4
 Mr. Watsy's case was originally assigned to Judge Newblatt. The defendants moved for dismissal on the ground that the judgment in Walker v. Johnson, supra, foreclosed the plaintiff's action. Judge Newblatt denied the motion, observing that "[p]laintiff Watsy may have suffered individualized constitutional deprivations that are subject to analysis and disposition apart from the class wide condition claims adjudicated in Walker. " Judge Newblatt also noted that "Walker involved a request for injunctive and declaratory relief as opposed to plaintiff Watsy's demand for damages."
 
 
 5
 Mr. Watsy's case was later reassigned to Judge Cohn, as was a related class action in which monetary damages were being sought. The defendants had moved to consolidate the two actions, and plaintiff Watsy had opposed consolidation "at least until discovery has been completed." Mr. Watsy acknowledged in his brief that "certain issues are common," but he asserted that most of his claims involved "personal injury," and were thus "distinguishable" from those in the class action. He also averred that his case involved claims of constitutional violations beginning prior to the disturbances out of which the class action arose. The motion to consolidate was never ruled on.
 
 
 6
 On September 30, 1985, the class action was disposed of by entry of a consent judgment. See In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703 (E.D.Mich.1985). In approving the consent decree, Judge Cohn noted that he had certified a class "of between 6,000 and 10,000 persons, all of whom were under the Michigan Department of Corrections' jurisdiction and prisoners at SPSM at any time from May 21, 1981 through August 31, 1981." Id. at 704. Judge Cohn exercised his discretion to prevent any affected inmate from opting out of the class.
 
 
 7
 The consent judgment mandated the "[s]ettlement of all claims by members of the class arising out of the May, 1981 riots and the subsequent lockdown at SPSM," and the "[d]ismissal with prejudice of all pending claims against the defendants." 107 F.R.D. 706. The defendants were required to establish certain funds to be used for the benefit of the entire class and to pay specified sums to designated plaintiffs and their attorneys.
 
 
 8
 On September 30, 1985--the very day on which the consent decree was entered--plaintiff Watsy filed an affidavit with the district court in which he admitted that he had obtained a copy of the proposed consent decree and had attempted without success to get himself included as one of the beneficiaries listed in the decree by name.
 
 
 9
 On October 4, 1985, Judge Cohn issued an order requiring plaintiff Watsy to show cause why his individual case should not be dismissed. Mr. Watsy responded. On May 23, 1986, Judge Cohn dismissed Mr. Watsy's individual action, finding that "[t]he consent judgment resolved the issues in this case." Mr. Watsy's then perfected the instant appeal.
 
 
 10
 Some months earlier Mr. Watsy had also filed a notice of appeal from the consent decree. On November 7, 1986, the defendants sent Mr. Watsy a letter proposing settlement. The letter stated:
 
 
 11
 "Yours is the only remaining appeal and thus the only remaining case holding up the distribution of funds to the other class members.
 
 
 12
 The MCO has extended an offer to you to settle your individual case for $500. I've attached it for your review and signature if agreeable. If you agree to this settlement, your appeal will be voluntarily dismissed and you will receive payment immediately. These funds are not attachable by the Department from your account. In addition, you will be eligible to apply to the Special Injury Fund for additional compensation for any serious physical injuries you may have suffered."
 
 
 13
 The plaintiff accepted the settlement offer, and his appeal from the consent decree was voluntarily dismissed. The settlement agreement signed by Mr. Watsy provided that:
 
 
 14
 "5. Appellant agrees that, except for the terms of the Consent Judgment, receipt of said amounts shall be in full and complete satisfaction of any and all claims relative to MCO and its officers, agents, employees and members in connection with events at SPSM from May 22, 1981 to the end of the post-1981 riot lockdown and ensuing prison conditions.
 
 
 15
 6. Without limitation on the foregoing, Appellant on the one hand and MCO on the other do hereby release, acquit and discharge the other of any and all claims relative to the events at SPSM from May 22, 1981 to the end of the post-1981 riot lockdown and ensuing prison conditions."
 
 
 16
 There was some subsequent confusion about whether the parties were abiding by the settlement agreement, and Mr. Watsy filed a motion to reinstate his appeal. The controversy was subsequently resolved, and Mr. Watsy withdrew his motion.
 
 II
 
 17
 Mr. Watsy offers three arguments as to why his action is not barred by the consent decree, despite the provision in the decree requiring dismissal with prejudice of "all pending claims against the defendants." In a brief filed prior to his obtaining counsel, Mr. Watsy argued that his complaint set forth claims that arose prior to the lockdown incident, while the consent decree only concerned claims arising after the lockdown. This argument has no merit. Mr. Watsy's amended complaint, which purports to provide "a meticulously detailed statement" of the basis of his complaint, begins with a discussion of the prison guard walkout that resulted in the lockdown. No earlier claims are alleged.
 
 
 18
 Mr. Watsy's second argument is advanced through his attorney. The argument is that the principles elucidated in Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867 (1984), prevent application of the doctrine of res judicata here.
 
 
 19
 In Cooper, a class action judgment had determined that an employer did not engage in a general pattern or practice of racial discrimination against a certified class of employees. The Supreme Court held that the individual plaintiffs, although members of the class, were not barred from maintaining their individual suits because
 
 
 20
 "The judgment is not ... dispositive of the individual claims the ... petitioners have alleged in their separate action. Assuming they establish a prima facie case of discrimination under McDonnell-Douglas, the Bank will be required to articulate a legitimate reason for each of the challenged decisions, and if it meets that burden, the ultimate questions regarding motivation in their individual cases will be resolved by the District Court." 467 U.S. 880.
 
 
 21
 The Supreme Court reasoned, in effect, that the determination that the employer had not engaged in an overall pattern or practice of discrimination would not foreclose a finding that the employer had discriminated against particular employees in particular instances.
 
 
 22
 In the case at bar, by contrast, the terms of the decree entered in the class action clearly foreclose any recovery in plaintiff Watsy's individual case. The consent decree was designed to end "all" actions arising out of the 1981 lockdown incident. The reason Judge Cohn certified the class in the first place was that he found the defendant prison employees did not possess the means to satisfy all the judgments the inmates might recover. To insure that each plaintiff received an equitable award, the consent decree awarded specified sums to specified individuals and established a fund to provide relief to the entire class. That done, the decree went on to provide that "the claims of all class members ... are dismissed with prejudice and ... class members are forever barred from asserting any and all claims they have asserted or could have asserted against defendants...." Plaintiff Watsy's claims would thus be barred even if he had not entered into the individual settlement agreement disposing of "any and all claims" relating to prison conditions associated with the riot lockdown.
 
 
 23
 Mr. Watsy contends, finally, that he should not be bound by the consent decree because he
 
 
 24
 "was denied minimal due process when his lawsuit was dismissed as a result of a consent judgment in a class action in another case entered without personal service or the mailing of notice to Larry Watsy of the existence of the class action or the entry of the consent judgment."
 
 
 25
 Mr. Watsy never denies, however, that he knew of the class action, or that he appealed from the decree in that action, or that he entered into a settlement agreement disposing of his appeal. Mr. Watsy has no standing to raise the question whether the notice given by the defendants through publication and through posting on prison bulletin boards would have passed constitutional muster as far as he was concerned if he had not actually learned of the class action. He did learn of it, and we may not pretend he did not.
 
 
 26
 The judgment of the district court is AFFIRMED.