NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TRIPLE G PARTNERSHIP, et al., *Plaintiffs/Appellants-Cross Appellees*,

*v.*

MOHAVE COUNTY, *Defendant/Appellee-Cross Appellant.*

No. 1 CA-CV 18-0529
FILED 1-28-2020

Appeal from the Superior Court in Maricopa County
No. CV 2016-017837
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Dickinson Wright PLLC, Phoenix
By Albert H. Acken
*Counsel for Plaintiffs/Appellants-Cross Appellees*

Jennings Strouss & Salmon PLC, Phoenix
By Laura R. Curry, Christopher W. Kramer, Danielle J. K. Constant
*Counsel for Defendant/Appellee-Cross Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

**C A M P B E L L**, Judge:

**¶1**        Triple G Partnership appeals the superior court's ruling that Mohave County obtained a roadway easement for public use through common law dedication over the portions of Hackberry Main Street that run through parcels owned by Triple G ("Roadway Property"). The County cross-appeals the superior court's determination that it did not acquire fee title to the Roadway Property by exercising its eminent-domain right through a *de facto* taking. In Arizona, roadway easements for public use can be established by common law dedication. *Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 421, ¶ 9 (2004). Because we find that the County acquired a permanent roadway easement over Main Street in Hackberry through common law dedication, but that Triple G retains fee title, we affirm.

## BACKGROUND

**¶2**        Old Trails National Highway, or as it is more commonly known, Main Street, has been used by the public since the 1800s, when it was the only road providing access to the town of Hackberry, Arizona. Main Street was the only way to access the Hackberry Mine discovered in 1879, Hackberry's cemetery established in 1884, and Hackberry's public school built in 1917. Main Street was once the only roadway between Peach Springs and Kingman and is part of the historic Old Trails National Highway. The County has maintained Main Street since 1916.

**¶3**        Main Street crosses property originally owned by the federal government before it issued patents for the land between 1916 and 1969. All the parcels at issue are now owned by Triple G.[1] In 2015, Triple G installed barricades blocking a portion of Main Street crossing the Roadway Property after a flood washed out the road. The County then sent a letter to Triple G, asserting that it had established prior rights to Main Street and demanding

---

[1]        The parcels at issue are Assessor Parcel Numbers ("APN") 313-14-001, 313-14-006, 313-14-007, 313-17-014, and 313-17-022.

that Triple G remove the barricades. Triple G sued to quiet title to the Roadway Property and the portions of Main Street running through the Roadway Property. The County filed an answer and counterclaim alleging it had acquired fee title to Main Street and the Roadway Property by exercising its eminent-domain right through a *de facto* taking or, in the alternative, had obtained a permanent roadway easement over Main Street.

**¶4** The superior court granted summary judgment in favor of the County, confirming that it acquired a roadway easement over the portions of Main Street that run through the Roadway Property, but that Triple G retained fee title to those portions of the Roadway Property. The court denied the County's counterclaim asserting it acquired title to the Roadway Property through a *de facto* taking. Both parties appealed.

## DISCUSSION

**¶5** We review *de novo* the grant of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the party that judgment was entered against. *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 528, ¶ 31 (App. 2014) (citation omitted). We review de novo issues of statutory interpretation. *Obregon v. Indus. Comm'n*, 217 Ariz. 612, 614, ¶ 9 (App. 2008). On review, we may affirm the superior court's ruling "if it is correct for any reason apparent in the record." *Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

### A. Common Law Dedication

**¶6** The superior court determined that Mohave County obtained a right of way easement via a common law dedication. Triple G contends the court erred for two reasons: (1) the doctrine of common law dedication does not apply to the federal government's offer to dedicate a highway (*see infra* ¶ 8) because public highways in Arizona can only be established through strict compliance with statute; and (2) the County did not properly accept the federal government's offer to dedicate Main Street before the Roadway Property was transferred to private ownership. We disagree.

**¶7** "Under the common law, an owner of land can dedicate that land to a proper public use." *Pleak*, 207 Ariz. at 421, ¶ 8. "The effect of a common law dedication is that the public acquires an easement to use the property for the purposes specified, while the fee remains with the dedicator." *Id*. An effective common law dedication has two general components: (1) an offer by the landowner to dedicate, and (2) acceptance by the general public. *Id*. at 423–24, ¶ 21. "No particular words, ceremonies, or form of conveyance is necessary to dedicate land to public use; anything

fully demonstrating the intent of the donor to dedicate can suffice." *Id.*
"[A]cceptance may be established by use."[2] *Lowe v. Pima Cty.*, 217 Ariz. 642,
648, ¶ 27 (App. 2008); Restatement (Third) of Property: Servitudes § 2.18,
cmt. e ("Acceptance may be effected . . . by public use of the designated
areas, or by acts of maintenance or control by a governmental unit.").
"Where a dedication has been made, whether under a statute or at common
law, and accepted by the public it becomes irrevocable." *Thorpe v. Clanton*,
10 Ariz. 94, 99–100 (1906).

**¶8**　　　　"Cases decided under [R.S. 2477] hold that it constitutes an
offer on the part of the federal government to dedicate unreserved lands for
highway purposes, which offer must be accepted by the public in order to
become effective." *State v. Crawford*, 7 Ariz. App. 551, 555 (1968). R.S. 2477
refers to the act of Congress of 1866, section 2477, Rev. St., codified as 43
U.S.C.A. § 932, Repealed. Pub. L. 94-579, Title VII, § 706(a), Oct. 21, 1976, 90
Stat. 2793. In 1866, Congress passed R.S. 2477 to encourage settlement and
development of public lands in the western United States. Hillary M.
Hoffmann, *Signs, Signs, Everywhere Signs: The Wilderness Society v. Kane
County Leaves Everyone Confused About Navigating A Right-of-Way Claim
Under Revised Statute 2477*, 18 Hastings W.-N.W. J. Envtl. L. & Pol'y 3, 7
(2012). The statute reads: "The right of way for the construction of highways
over public lands, not reserved for public uses, is hereby granted." *City of
Phoenix v. Kennedy*, 138 Ariz. 406, 407, ¶ 8 n.1 (App. 1983). R.S. 2477 was
repealed in 1976, but rights-of-way granted under the statute remain valid.
PL 94–579, Sec. 507, October 21, 1976, 90 Stat 2743. "The federal statute does
not of itself operate to grant right-of-ways and establish highways contrary
to the local laws." *Crawford*, 7 Ariz. App. at 555. Highways "must be
established in strict compliance with the provisions of the Arizona law." *Id.*

**¶9**　　　　"It was settled long ago in [Arizona] that the doctrine of
common law dedication applies to the dedication of roadway easements for
public use." *Pleak*, 207 Ariz. at 421, ¶ 9. In *Pleak*, property owners sought to
enjoin owners of a neighboring development from blocking their use of an

---

[2]　　While use is enough to establish acceptance through common law
dedication, Arizona follows a statutory scheme for establishing fee title to
public highways. *See* A.R.S. § 28-6701, *et seq*. However, in other
jurisdictions, use alone is enough to establish fee title. *See e.g., Camp Bird
Colorado, Inc. v. Bd. of Cty. Comm'rs of Cty. of Ouray*, 215 P.3d 1277, 1285
(Colo. App. 2009); *Montgomery v. Somers*, 90 P. 674, 677 (Or. 1907); *Luchetti
v. Bandler*, 777 P.2d 1326, 1327–28 (N.M. App. 1989); *Stichting Mayflower
Mountain Fonds v. United Park City Mines Co.*, 424 P.3d 72, 78, ¶¶ 27–29 (Utah
2017).

access road for which the neighbors' predecessor in interest had recorded a survey dedicating a roadway easement for public use. *Id.* at 420, ¶¶ 2–5. The neighbors argued that the 1901 Territorial Code had abrogated common law dedication as applied to roadway easements for public use. *Id.* at 421, ¶ 9. The Arizona Supreme Court rejected this assertion, upholding common law dedication of roadway easements for public use. *Id.* at 420, ¶ 1. The Court explained that, as a matter of statutory construction, Arizona statutes should be read as consistent with common law absent clear legislative intent to abrogate. *Id.* at 422, ¶ 12 ("[T]he common law, except when repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state . . . is adopted and shall be the rule of decision in all courts of this state.") (internal citation omitted). The Court reasoned that while a "public road" or "public highway" can only be created through statutory means, that does not prevent landowners from dedicating their property to public use. *Id.* at 423, ¶ 18. The Court explained the difference between a statutory dedication, where fee title passes to the government, and a common law dedication, where fee title remains with the dedicator. *Id.* at 422, ¶ 13.

**¶10** Here, the County obtained a roadway easement for public use over Main Street through common law dedication. The parties agree that R.S. 2477 was an offer by the federal government to dedicate rights-of-way over unreserved federal lands for the construction of public highways. The County accepted this offer to dedicate in compliance with Arizona common law when the public began to use Main Street. When the County accepted the offer, the dedication became irrevocable.

**¶11** Triple G nevertheless contends that common law dedication does not apply to grants under R.S. 2477 because public highways can only be established in Arizona by strict compliance with statute. *See, e.g., Cochise Cty. v. Pioneer Nat. Title Ins. Co.*, 115 Ariz. 381, 384 (1977) (Under the federal act, public highways "must be established in strict compliance with the provisions of the Arizona law"); *Tucson Consol. Copper Co. v. Reese*, 12 Ariz. 226, 229 (1909) ("The matter of the establishment of public highways . . . is wholly statutory."); *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1077 (9th Cir. 2010); *S. Utah Wilderness Alliance. v. Bureau of Land Mgmt.*, 425 F.3d 735, 770 (10th Cir. 2005) (recognizing Arizona as a state that requires "official action by the local body of government before a public highway [can] be deemed 'accepted'"), *as amended on denial of reh'g* (Jan. 6, 2006). We agree that had the County wanted to establish a highway and take fee-simple title to the property, it would have had to do so in compliance with statute. However, the right of way at issue here is not a statutorily established highway but rather a public easement created under the common law

5

doctrine of dedication. The federal government's offer to grant rights-of-way was explicit that it could be accepted in *any way* compliant with Arizona law. The offer did not specify that a state's acceptance of a right-of-way must be by statute.

**¶12**     *Pleak* makes clear that the requirement that public highways and roads be created by statute does not abrogate the common law doctrine permitting landowners to dedicate roadway easements over their property to the public. Statutory highway establishment and common-law roadway dedication each result in the conveyance of different and distinct property interests. The statutory procedure for creating roadways vests fee title in the public, whereas the common law dedication of roadway easements for public use does not. The cases Triple G cites are consistent with *Pleak*'s pronouncement and with the principle that our statutes should be read as consistent with the common law. The County accepted the offer in compliance with the common law of Arizona.

**¶13**     Triple G argues that *Pleak* is distinguishable because (1) R.S. 2477 represents an offer by the federal government to convey a right-of-way, whereas *Pleak*'s holding was limited to permitting private landowners to dedicate rights-of-way; and (2), in *Pleak*, the Court acknowledged that the determinative difference between a public road and a public highway is that a public road can be created by common law dedication of an easement, but a public highway can only be created by statute. We find the holding in *Pleak* has broader application.

**¶14**     First, *Pleak* mentions private landowners because the property at issue in that case was privately owned. Nothing in *Pleak* suggests that an offer by the federal government to dedicate under R.S. 2477 should be treated differently than an offer to dedicate made by a private landowner. Triple G contends that implied easements over federal lands should be treated differently than those over private lands because the former are disfavored. *See, e.g.*, *Leo Sheep Co. v. United States*, 440 U.S. 668, 669 (1979). However, the County's roadway easement over Main Street is not an implied easement. R.S. 2477 was an offer by the federal government to dedicate the roadway that the County accepted consistent with Arizona common law. This acceptance is demonstrated by public use and county maintenance of the roadway for over 100 years.

**¶15**     Second, any purported legal difference between "public roads" and "public highways" is not relevant here. When the County accepted the federal government's offer through common law dedication, the interest that passed was not a fee-title interest in a public road or

highway, but a roadway easement for public use. In any case, *Pleak* does not distinguish between "public roads" and "public highways," but refers to them interchangeably. *Pleak*, 207 Ariz. at 422–23, ¶¶ 13, 19 ("[P]ublic highways are those established by various statutory means[]." . . . "Public roads, or those roads in which the fee is owned by governmental entities, cannot be created except by statute . . . .") (internal citations omitted). Further, in describing *Burlington Northern and Santa Fe Railway Co. v. Arizona Corporation Commission*, 198 Ariz. 604, 605 (App. 2000), *Pleak* explained that "public roads" in the context of the statute at issue in that case referred only to the roads identified as "public highways" in *Territory v. Richardson*, 8 Ariz. 336 (1904). *Pleak*, 207 Ariz. at 423, ¶ 19. Any semantic difference between "public roads" and "public highways" is of no import.

¶16        Finally, Triple G argues that, even if common law dedication does apply, the County did not obtain a roadway easement because the Roadway Property was sold to private parties, before the County took actions sufficient to accept the federal government's offer to dedicate. However, the record shows that the public was using Main Street at least as early as 1879 to access the Hackberry mine. And as of 1883, Main Street was the only road running through and providing access to Hackberry. The County accepted the federal government's offer to dedicate the right of way as evidenced by a century of public use of Main Street before the Roadway Property was sold to Triple G. Triple G took the property with implicit knowledge of the public's historic use of the roadway because, as the partners of Triple G, the Griggs, opine in their opening brief, "Hackberry is the Griggs and the Griggs are Hackberry." To argue they were unaware of the historic public use of Main Street would be disingenuous.

### B. *De Facto* Taking

¶17        Because we find that the County has a roadway easement for public use created through a common law dedication, we conclude that the County has not exercised its eminent-domain right to acquire fee title to the Roadway Property through a *de facto* taking. As a threshold matter, we note that a claim of a *de facto* taking, or an inverse condemnation suit, is a cause of action that vests in the injured property owner to recover just compensation. In contrast, a governmental entity takes property through a direct taking. We find no support in case law for the proposition that the County may allege that it acquired the Roadway Property through a *de facto* taking. *See, e.g.*, *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168 (2019) (internal citation omitted) ("Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant. Inverse

condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority.") (internal citations omitted); *City of Scottsdale v. CGP-Aberdeen, L.L.C.*, 217 Ariz. 626, 628, ¶ 6 n.3 (App. 2008) ("A direct or straight condemnation is one in which the condemning [governmental entity] files an eminent domain complaint and is later granted possession of the property. An inverse condemnation, by contrast, is one in which the [governmental entity] takes the property without filing a complaint, and it is the landowner who thereafter files suit to obtain just compensation.") (internal quotations omitted); *City of Yuma v. Lattie*, 117 Ariz. 280, 283 (App. 1977) ("If [a governmental entity] fails to institute an eminent domain action and private property is taken or damaged for public use, Article 2, Section 17 of the Constitution is self-executing and the right to bring an inverse eminent domain action vests in the property owner.").

**¶18**        Moreover, to acquire the Roadway Property through a *de facto* taking, the County would have had to substantially interfere with the property rights of the owner. *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 525, ¶ 18 (App. 2009) ("To prevail [in an inverse condemnation suit], a plaintiff must prove a governmental entity constructed or developed a public improvement that substantially interfered with the plaintiff's property right."). However, all the actions taken by the County, including improving and maintaining Main Street, are consistent with its rights as the roadway-easement holder. The County's actions therefore did not interfere with the property rights of the Griggs or their predecessors in interest. This conclusion is logically sound. Were this court to conclude that a governmental entity could interfere with a dedicator's property rights by using the property pursuant to the dedication, and thereby acquire title to the property through a *de facto* taking, we would render common law dedication a meaningless doctrine because title could never remain with the dedicator, always passing to the government instead.

**¶19**        Finally, the interest the County obtained by common law dedication precludes the claim of a *de facto* taking. Because the County acquired a public easement over the Roadway Property through common law dedication, fee title remains with the dedicator. The County could engage in a condemnation proceeding if it needs to acquire fee title to the property. However, at this time the County's interest in Main Street extends only to a public right of way easement. Fee title to the Roadway Property lies with Triple G.

## CONCLUSION

**¶20**        For the forgoing reasons, we affirm: (1) the superior court's grant of summary judgment in favor of the County on count I of its counterclaim such that it has a roadway easement for public use over the portions of Main Street that run through the Roadway Property; (2) the superior court's denial of summary judgment to the County on count II of its counterclaim to quiet title to the Roadway Property by exercise of its eminent-domain right through a *de facto* taking, such that Triple G retains fee title to the Roadway Property subject to the County's easement; and (3) the superior court's denial of Triple G's motion for summary judgment on its quiet title claim. In our discretion, we decline to award attorney fees on appeal.



AMY M. WOOD • Clerk of the Court
FILED:  AA